**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IMMANUEL BAPTIST CHURCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 00932 |
| | ) | |
| CITY OF CHICAGO. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This case presents the question: "When is a church like a library?" When it comes to parking needs, the City of Chicago says, "Never." But the Immanuel Baptist Church, the plaintiff in this case, says its parking needs are no different than those of a library. The Church brought this lawsuit against the City after it was unable to purchase a building in which to hold its services because City zoning requirements require the Church to have off-street parking that the property did not offer. Libraries of comparable size, by contrast, require no off-street parking. The Church alleges that in treating religious assemblies worse than comparable secular assemblies like libraries, the City's parking regulations facially violate the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. 2000cc, *et. seq.*, and deny the Church equal protection under the Fourteenth Amendment. The City moved to dismiss the Church's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Upon agreement of the parties, the City's motion was subsequently converted to a motion for summary judgment and the Church has moved for summary judgment as well. Because the Church has failed to present prima facie evidence to support its RLUIPA claim, the Court grants the City's motion for summary judgment on that claim. The Court also grants the City's motion for summary judgment on the equal protection claim because the City has shown that it is entitled to

judgment on that claim as a matter of law. The Court denies the Church's motion for summary judgment. The Church, however, may still pursue an as-applied RLUIPA claim.

## BACKGROUND

### I.     Procedural History

Before the Court are cross-motions for summary judgment on the Church's RLUIPA and equal protection claims. The motions, however, have a somewhat unusual procedural history. The Church's complaint was filed in February 2017. In May 2017, in an effort to expeditiously resolve the legal issues in the case where there appeared to be no disputes of material facts, the parties, at the Court's suggestion, agreed to proceed with motions for summary judgment on the basis of the facts set forth in the complaint.

The Church initially filed a motion for preliminary injunction on May 4, 2017, and shortly thereafter, on May 15, 2017, the City moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6). Pl.'s Mot. for Prelim. Inj., ECF No. 14; Def.'s Mot. to Dismiss, ECF No. 17. During a hearing before the Court on May 16, 2017, the parties indicated that there were no significant factual disputes. Hr'g Tr. 3:23–4:1, 4:9–5:10, May 16, 2017, ECF No. 34. Based on this indication, the Court proposed to the parties that it convert the City's motion to dismiss to a motion for summary judgment and resolve the questions of law at issue in the case based on the undisputed facts set forth in the Church's complaint. *Id.* 6:9–7:13. The parties agreed to the Court's proposal.[1] *Id.*; Order, May 16, 2017, ECF No. 20. On June 7, 2017, the Church filed its response to the City's converted motion for summary judgment and moved for summary judgment in the Church's favor on both claims. Pl.'s Resp., June 7, 2017, ECF No. 25. However, in support of its response and cross-motion, the Church asserted additional facts beyond those set

---

[1] In light of the agreement, the Church's motion for a preliminary injunction was denied without prejudice to reassertion. Order, May 16, 2017, ECF No. 20.

forth in the complaint. *Id.* 2 n.2. The City moved to strike the Church's response and cross-motion in its entirety because it relied on facts not set forth in the complaint and because the Church improperly moved for summary judgment. Def.'s Mot. to Strike, June 16, 2017, ECF No. 26.

At a hearing before the Court on June 22, 2017, the Court clarified that in its May 16, 2017 order converting the City's motion to dismiss to a motion for summary judgment, it intended to consider arguments by the Church in favor of a cross-motion for summary judgment. Hr'g Tr. 2:11–3:14, 4:3-9, June 22, 2017, ECF No. 35. The Court further clarified it would only consider the facts set forth in the complaint as the agreed statement of facts for both parties' summary judgment motions and respective responses to those motions. Hr'g Tr. 5:17–7:25; Order, June 22, 2017, ECF No. 33. The parties again agreed to proceed with cross-motions for summary judgment based only on the facts set forth in the complaint. *Id.* Accordingly, the City's motion to strike was denied as moot. Order, June 22, 2017, ECF No. 33. The City then filed its reply on July 14, 2017. Def.'s Reply, July 14, 2017, ECF No. 36.

## II.    Facts

Based on the parties' agreement and this Court's orders, the Court considers only the facts set forth in the Church's complaint as the agreed statement of facts for the City's converted motion for summary judgment and the Church's cross-motion for summary judgment. Cross-motions for summary judgment require a district court to "take the motions one at a time" and to construe the evidence and make all reasonable inferences in favor of the party against whom the motion under consideration is made. *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008).

Since its founding in 1994, the Church has operated in various locations throughout Chicago, Illinois. The Church, which has approximately 60 members and a weekly adult attendance of roughly 80 people, conducts a variety of ministries and religious exercises, including weekly worship assemblies, preaching, pastoral counseling, prayer meetings, singing and musical performances, baptisms, weddings, communion, bible studies, service projects, evangelism, and financial giving. In August 2011, the Church began meeting at 1443 West Roosevelt Road in Chicago (the "Property"), which the Church leases from its owner for $2,700 per month. The Property is located within Subarea B of the City's Planned Development 896 ("PD 896"). The City's Permitted Uses Table states that churches are allowed to operate in Subarea B of PD 896. The Property is approximately 3,900 square feet and consists of a worship center and classrooms. There is no on-site parking at the Property, but street parking is widely available in the surrounding area throughout the week, and the property is surrounded by vacant lots. In November 2012, the City granted the Church an occupancy permit for 146 persons.

In 2016, the Church reached an agreement with the Property owner to purchase the Property and prepared to complete the purchase in June 2016. However, the transaction was halted due to the City's parking requirements for religious assemblies. Before completing the purchase of the Property, the Church's lender requested a determination regarding the legal requirement for parking at the Property. In July 2016, the Assistant Commissioner for the City's Department of Planning and Development, Patrick Murphey, informed the Church and its lender that certain parking requirements must be met to permit the Church's operation at the Property. The parking requirements for the Property are governed by 17-10-0207 of the Chicago Zoning Ordinance (the "Ordinance"), which sets forth requirements for 23 different "Parking Groups." Compl. ¶ 54, Ex. I. Parking Group I for religious assemblies requires one parking space per eight

seats in the auditorium. Accordingly, the City has insisted that the Church have one off-street parking spot for every eight seats. Under the Ordinance, however, other nonreligious assembly uses have different parking requirements. The Church's claim focuses on Parking Group F for cultural exhibits and libraries, which requires no parking for facilities up to 4,000 square feet, and only one parking space per each additional 1,000 square feet over 4,000. It points as well to Parking Group P, which requires no parking for live theater venues with less than 150 seats.

The Church pursued several parking alternatives in an attempt to meet the City's one-to-eight parking space requirement. One such alternative was a lease of a nearby unused parking lot owned by the Chicago Housing Authority ("CHA"). In email correspondence with the Church's pastor regarding the potential parking lease, Murphey stated that the City would need to examine the lease terms and "review if the continued presence of a religious assembly facility along Roosevelt Road in this block, and the associated parking, are appropriate." *Id.* ¶ 33. In another email to the Church's counsel regarding the parking lease, Murphey explained that the City looks for certain minimum lease terms and stated that "while the religious assembly use is allowed in the relevant sub area of this planned development, the department is as yet unconvinced that it supports a non-commercial use of this type along this portion of Roosevelt Road." *Id.* ¶¶ 34-35, Ex. 4 at 6. The City rejected the Church's proposed lease of the CHA-owned parking because the lease could only last for 384 days at a time. The Church's attempts to negotiate other parking arrangements with its neighbors were unsuccessful, and it has been unable to purchase and operate the Property as a church.

**DISCUSSION**

Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the movant presents evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-movant to provide evidence of specific facts creating a genuine dispute. *Id.* (citing *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995)).

## I.    RLUIPA Claim

The Church maintains that the City's parking regulations violate the "equal-terms" provision of RLUIPA. That provision bars a government from imposing or implementing "a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The statute is violated "whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses." *Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007) (citing *Vision Church, United Methodist v. Vill. of Long Grove*, 468 F.3d 975, 1002-03 (7th Cir. 2006); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1308 (11th Cir. 2006); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1229-31 (11th Cir. 2004)). In *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, the Seventh Circuit held that an equal-terms violation exists if a religious land use is treated less favorably than a secular land use that is similarly situated as to the relevant zoning criterion. 611 F.3d 367, 370-372 (7th Cir. 2010) (en banc); *see also Affordable Recovery Hous. v. City of Blue Island*, No. 12-cv-4241, 2016 WL 5171765, at *14 (N.D. Ill. Sept. 21, 2016) ("According to the Seventh Circuit, a regulation will violate the 'equal terms' provision of RLUIPA only if it treats religious

assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to the accepted zoning criteria.") (citing *River of Life*, 611 F.3d 367). A plaintiff need not demonstrate unequal treatment between "two institutions similarly situated in all relevant respects." *Vision Church*, 468 F.3d at 1003. For example, "if a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision." *River of Life*, 611 F.3d at 371.

An equal-terms violation may occur in one of three different ways: "(1) a statute that facially differentiates between religious and nonreligious assemblies or institutions; (2) a facially neutral statute that is nevertheless 'gerrymandered' to place a burden solely on religious, as opposed to nonreligious, assemblies or institutions; or (3) a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious assemblies or institutions." *Irshad Learning Ctr. v. Cty. of DuPage*, 937 F. Supp. 2d 910, 932 (N.D. Ill. 2013) (quoting *Vision Church*, 468 F.3d at 1003). Here, the Church alleges that the City's Ordinance is a facial violation of the equal-terms provision because it imposes a more onerous parking requirement on religious assemblies than on certain live theater venues and libraries.[2] Compl. ¶ 62, ECF No. 1 ("the City's Ordinance, on its face, violates RLUIPA's equal terms provision").

The first question that must be addressed to resolve this dispute is who bears the burden of proof with respect to identifying similarly situated secular comparators who are treated more

---

[2] The Church's complaint asserts only a facial challenge to the Ordinance. In its cross-motion for summary judgment, the Church also argues that the City has engaged in an as-applied violation of the equal-terms provision because it has unequally implemented the Ordinance. Pl.'s Resp. 11, June 7, 2017, ECF No. 25. The Church's as-applied theory, however, is based on facts not in the complaint, which the Court does not consider for purposes of the parties' motions for summary judgment. The Court therefore only considers the Church's claim for a facial violation of RLUIPA.

favorably than churches under the City's parking ordinance. The parties, not surprisingly, disagree. The City argues that it is entitled to summary judgment on the Church's RLUIPA claim because the Church has failed to identify nonreligious assemblies that are treated better than religious assemblies and that are similarly situated with respect to the relevant zoning criteria— that is, the need for off-street parking. Relying on Ninth Circuit precedent, however, the Church maintains that "the burden is not on the church to show a similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance." Pl.'s Resp. 3, June 7, 2017, ECF No. 25 (citing *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1173 (9th Cir. 2011)).

Neither party is entirely correct, as RLUIPA contains a burden-shifting provision that makes plain that the **_plaintiff_** has the burden to produce evidence to establish a prima facie violation; only then does the burden of persuasion shift to the defendant. According to the statute, "if a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim." 42 U.S.C. § 2000cc-2(b). The Church's view that, notwithstanding § 2000cc-2(b), the City has the burden of proof regarding comparability, mirrors that of the Fifth and Ninth Circuits, which have held that a prima facie case for an equal-terms claim is established by "an ordinance that expressly differentiates religious land uses from nonreligious land uses." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 291 (5th Cir. 2012); *Centro Familiar*, 651 F.3d at 1171 (finding that the "express distinction drawn" by the ordinance at issue established a prima facie case for unequal treatment). In those circuits, a plaintiff need only identify an ordinance that facially distinguishes between religious and

nonreligious lands uses to shift the burden to the defendant to show no unequal treatment based on similarly-situated secular comparators. *Opulent Life*, 697 F.3d at 293 ("To bear its burden, [the defendant] must first identify the regulatory purpose or zoning criterion that explains the religious facilities ban, as stated explicitly in the text of the ordinance, and then show that it has treated religious facilities on equivalent terms as all nonreligious institutions that are similarly situated with respect to that stated purpose or criterion."); *Centro Familiar*, 651 F.3d at 1173 (If the plaintiff establishes a prima facie case, "the burden is not on the church to show a similarly situated secular assembly, but on the city to show that the treatment received by the church should not be deemed unequal, where it appears to be unequal on the face of the ordinance.").

The Seventh Circuit has not weighed in on whether an ordinance that expressly differentiates religious land uses from nonreligious land uses suffices under § 2000cc-2(b) to shift to the government the burden of persuasion on every element of a RLUIPA claim.[3] But defining a "prima facie" equal-terms claim to require only a facial distinction between the treatment of religious and non-religious uses is inconsistent with the rationale of *River of Life*. A "prima facie" claim is a claim that, absent rebuttal, is sufficient to carry the day. *See Prima Facie Case*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("prima facie case" means "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor"); *Hall v. Forest River, Inc.*, 536 F.3d 615, 621 n.1 (7th Cir. 2008) ("'prima facie case'" means those elements of a cause of action a plaintiff must establish to prevail"); *Airline*

---

[3] One court in the Northern District of Illinois has found that where an ordinance, on its face, appeared to "treat similar assemblies on less than equal terms," the burden shifted to the defendant "to demonstrate that the apparently unequal treatment is based on legitimate zoning criteria, such as traffic flow, parking concerns, or tax revenue generation." *Christian Assembly Rios De Agua Viva v. City of Burbank, Ill.*, 237 F. Supp. 3d 781, 792-93 (N.D. Ill. 2017). This formulation requires a showing of similarity between the religious and secular uses at issue, and therefore differs from the approach adopted by the Fifth and Ninth circuits.

*Pilots Ass'n, Int'l v. Dep't of Transp.*, 880 F.2d 491, 499 (D.C. Cir. 1989) ("A *prima facie* case . . . requires more than a showing of mere possibility; it means that if no rebuttal evidence is submitted, the proponent has met his burden of proof and is entitled to prevail."). In *River of Life*, the Seventh Circuit held that a governmental regulation violates the equal-terms provision of RLUIPA only where it treats religious assemblies or institutions less favorably than secular assemblies or institutions that are similarly situated as to the relevant zoning criteria. 611 F.3d at 371. In adopting this test, the Court of Appeals expressly rejected the notion that mere facial differential treatment between a church and any other assembly violates the equal-terms provision. 611 F.3d at 370. If a violation of RLUIPA's equal-terms provision requires evidence of different treatment between **comparable** religious and secular uses, then it follows that to establish a prima facie equal-terms violation, the plaintiff must come forward with evidence of a similarly situated secular comparator that is more favorably treated in order to shift the burden to the defendant to rebut the showing of comparability.[4]

Accordingly, the Court concludes that the Church bears the burden of establishing a prima facie case that the Ordinance, on its face, treats religious assemblies less favorably than **comparable** secular assemblies.[5]  In a facial constitutional challenge, "the claimed constitutional violation inheres in the terms of the statute, not its application." *Ezell v. City of Chicago*, 651

---

[4] Despite its view that facially disparate treatment violates the equal-terms provision without regard to whether the secular uses subject to the regulation are comparable to the religious uses, the Eleventh Circuit recognizes the need for comparability in the context of an as-applied challenge to a neutral statute. "A plaintiff bringing an as-applied Equal Terms challenge must present evidence that a *similarly situated* nonreligious comparator received differential treatment under the challenged regulation. If a plaintiff offers no similarly situated comparator, then there can be no cognizable evidence of less than equal treatment, and the plaintiff has failed to meet its initial burden of proof." *Primera Iglesia*, 450 F.3d at 1311 (citing 42 U.S.C. § 2000cc–2(b)).

[5] In the context of assessing whether the Church has presented enough evidence to shift the burden of persuasion to the City, the question of whether the prima facie standard has been satisfied is appropriately a question for the Court.

F.3d 684, 698 (7th Cir. 2011). Given the nature of a facial challenge, it would seem appropriate to demand evidence sufficient to support a reasonable inference that the sort of religious assembly at issue is comparable to the type of facially favored secular assembly in, if not all, at least its principal characteristics as they relate to the relevant zoning criteria.

The Church's RLUIPA claim asserts that the Ordinance violates a statute, not the constitution, but the nature of its facial challenge is no different. Its focus is on whether the differing parking standard for churches and libraries violates the equal-terms provision in all of its potential applications. *Id.*; *see also, e.g., Koutnik v. Brown*, 456 F.3d 777, 783 (7th Cir. 2006) ("A party raising a facial challenge to a statute or regulation on vagueness grounds 'must demonstrate that the law is impermissibly vague in all of its applications.'") (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).

Here, that standard translates to a requirement that the Church present evidence sufficient to support a reasonable inference that at least the principal uses of "churches" are comparable to at least the principal uses of "libraries" or "theaters" as they relate to the relevant zoning criterion—*i.e.*, the need for off-street parking.[6] That would ***not*** mean that a facial challenge would require evidence relating to the specific comparison of the uses of the Church in this case and/or any libraries or theaters that may be located within the same zoning area; whether the parking required of a particular library or theater within the same zoning area as the Church was less onerous would present an as-applied, not a facial, challenge.

---

[6] I say "at least the principal uses," rather than "all uses," because in some contexts, notably First Amendment overbreadth claims, a facial challenge that is invalid in a substantial number of applications, even if not all, can nevertheless succeed. *See Ezell*, 651 F.3d at 698 n.8. The potential qualification does not matter in this case, because the Church has failed to satisfy even the less demanding standard of showing that libraries have comparable parking needs to churches.

The Church argues that theaters and libraries are comparable uses in regards to their parking needs. But to begin, arguments about the comparability of theaters can be dismissed out of hand, because, while the Ordinance imposes no minimum off-street parking requirements on small live theaters with less than 150 seats, theaters are not permitted at all within the Church's zoning area. The City points to the Permitted Uses Table for PD 896, which allows churches in Subarea B, but does not allow theaters. Def.'s Memo. in Supp. of Mot. to Dismiss 5, ECF No. 18. Because theaters, regardless of how much off-street parking they offer, are not permitted to operate in the subarea where religious assemblies are permitted to operate, the City argues that there is no unequal treatment to establish a RLUIPA violation. In response, the Church argues only that the exclusion of theaters in Subarea B of PD 896 is "of no consequence." Pl.'s Resp. 13, June 7, 2017, ECF No. 25. The City further argues that the Church has not established that a theater is similar to a church with respect to its parking needs.

Regardless of whether the parking needs of churches and theaters are comparable, the Court finds that the Church cannot show less equal treatment than theaters because theaters are not permitted in Subarea B of PD 896. Contrary to the Church's argument that this fact is "of no consequence," the exclusion of theaters as a permitted use in Subarea B is sufficient to defeat the Church's RLUIPA equal-terms claim to the extent it is based on less equal treatment than theaters. *See Affordable Recovery Hous.*, 2016 WL 5171765 at *15 (granting summary judgment in favor of defendants where plaintiff religious organization could not show that it was treated on less equal terms than a nonreligious organization). Churches are treated more, not less, favorably with respect to parking in Subarea B than are live theaters; no matter how much parking a live theater offers, it is not permitted to operate at that location.

The Church, however, also claims that the Ordinance violates RLUIPA because it treats religious assemblies less equally than libraries, which are permitted to operate in PD 896. The Church observes that the Ordinance does not require libraries under 4,000 square feet to provide any off-street parking, and larger libraries are required to provide only one space for every additional 1,000 square feet of building space. In its complaint, the Church alleges that, at 3,900 square feet, it is similar in size to the libraries that have no parking requirements. But the City argues that the Church's RLUIPA claim must fail because the Church has not shown it is comparable to a small library with respect to its parking needs. Specifically, the City asserts that the Church has not presented any facts to show that a library of 4,000 square feet "creates regular assemblages of people, akin to church congregations." Def.'s Memo. in Supp. of Mot. to Dismiss 7, ECF No. 18. Pointing to the Seventh Circuit's *River of Life* decision, which acknowledges that churches "generate[] groups of people coming and going at the same time," while libraries generate "a smoother flow of traffic throughout the day," *id.* (citing *River of Life*, 611 F.3d at 373), the City asserts that common sense and simple logic dictate that a small library and a church create different parking demands. *Id.*; Def.'s Reply 5, July 14, 2017, ECF No. 36.

In its response and cross-motion for summary judgment, the Church argues that RLUIPA's legislative history, case law, and international building and zoning codes establish that libraries are comparable to religious assemblies for purposes of an equal-terms analysis.[7] Pl.'s Resp. 4-6, June 7, 2017, ECF No. 25. The Church claims that RLUIPA's legislative history indicates that libraries are the "quintessential comparators to religious assemblies" and cites to a

---

[7] The Church also points to facts outside the complaint to establish that a nearby public library holds meetings and events that draw an attendance of similar size to the Church's weekly services. Pl.'s Resp. 7-8, June 7, 2017, ECF No. 25. However, for purposes of deciding the parties' cross-motions for summary judgment, the Court will not consider any facts outside those set forth in the complaint.

July 1999 Judiciary Committee House Report on RLUIPA (the "House Report"), which references survey results revealing that non-religious assembly uses, including libraries and 14 other types of assemblies, are often permitted "as of right in zones where churches require a special use permit, or permitted on special use permit where churches are wholly excluded."[8] H.R. REP. NO. 106-219, at 19 (1999). But the House Report's passing reference to libraries provides no discussion of whether and how libraries are similar to churches with regard to their respective parking needs.

The Church does not fare any better with its argument that international building and zoning codes support its claim that libraries are comparable to churches. The Church notes that Section 303 of the International Building Code groups churches and libraries, along with 15 other types of assemblies, in the same "Assembly Group." Pl.'s Resp. 6, Ex. A, June 7, 2017, ECF No. 25. However, there is no indication that this grouping is based on the parking needs of the assemblies. The Church also argues that Section 801 of the International Zoning Code imposes the same parking requirements on all assembly uses. The Court, however, is not persuaded that the International Zoning Code's lack of distinction among all assembly uses is evidence that libraries and churches have comparable parking demands.

The case law on which the Church relies to confirm the comparability of libraries and churches for purposes of its RLUIPA claim is similarly off-point. None of the cases cited by the Church specifically discuss whether libraries are similarly situated to churches with respect to parking, the relevant zoning criteria at issue in this case. *Digrugilliers*, 506 F.3d 612, includes no comparison of churches and libraries and no discussion of parking. *Opulent Life Church*, 697 F.3d 279, notes that libraries and churches are similar in the sense that both are non-commercial

---

[8] This is the only reference to libraries made throughout the House Report.

and non-tax generating land uses, but does not analyze the parking needs of the two land uses. In *Vineyard Christian Fellowship of Evanston, Inc. v. City of Evanston*, 250 F. Supp. 2d 961 (N.D. Ill. 2003), the court examines evidence presented regarding a church's parking needs, but it makes no comparison to a library's parking needs. And indeed, the only case of which the Court is aware that expressly addresses the comparability of a church and a library with respect to the traffic demands they pose is the Seventh Circuit's opinion in *River of Life,* which concludes, albeit in dicta, that the burdens they pose are quintessentially different, not comparable. 611 F.3d at 373 ("a church is more like a movie theater, which also generates groups of people coming and going at the same time, than like a public library, which generates a smoother flow of traffic throughout the day").

The Court therefore agrees that the Church has not put forth evidence to demonstrate that a library regularly draws groups of visitors for discrete events in the same way that a church typically does. The principal uses of a church are generally considered to include worship services that attract substantial numbers of people who arrive and depart within concentrated time periods before and after the services. A church service is quintessentially a group activity: "The Bible knows nothing of solitary religion."[9] Paradigmatically, by contrast, a visit to a library, to check out a book, or read, or research, is an individual action. This is not to suggest that church members never visit the church alone to pray, or that groups never meet at libraries. But where we are addressing a *facial* challenge to a statute that imposes different parking requirements on churches and libraries, there must be a basis to conclude that those uses are, if

---

[9] John Wesley, *John Wesley Quotes,* QUOTES.NET, http://www.quotes.net/quote/50309 (last visited Sep. 22, 2017). Wesley, of course, was an 18th century preacher, but the modern take is the same: "Churchgoers are like coals in a fire. When they cling together, they keep the flame aglow; when they separate, they die out." Billy Graham, *Billy Graham Quotes,* QUOTES.NET, http://www.quotes.net/quote/58514 (last visited Sep. 22, 2017).

not always, at least generally comparable with respect to their parking needs. It is the Church's burden to produce prima facie evidence—that is, evidence sufficient to support a verdict in its favor—showing that the parking needs of a typical library are comparable to those of a typical church. As reflected by the Seventh Circuit's opinion in *River of Life,* intuitively the burdens they pose seem quite different and the evidence the Church has presented does not show that this common sense notion is generally unfounded. Because the Church has failed to produce prima facie evidence to support its equal-terms claim, the burden of persuasion does not shift to the City and the Church's facial challenge fails as a matter of law. The Court, therefore, denies the Church's motion for summary judgment on its facial RLUIPA claim and grants the City's motion for summary judgment on that claim.

The Church's case, however, should not necessarily be terminated at this stage. This ruling addresses only the Church's facial challenge to the Ordinance. The Church clearly also seeks to advance an as-applied RLUIPA claim. *See* Pl.'s Resp. 11-13, Exs. C-F, June 7, 2017, ECF No. 25. Given the unique procedural posture of this case, the Court deems it appropriate to give the Church an opportunity to amend its complaint to assert such a claim if it wishes to do so. Allowing the Church to amend its complaint will not prejudice the City, which initially moved to dismiss the Church's complaint under Rule 12(b)(6) before agreeing to convert its motion to dismiss to the instant motion for summary judgment. Effectively, the City got what it was seeking—a dismissal with prejudice of the facial challenge to the Ordinance. But courts should generally provide plaintiffs at least one opportunity to amend their complaint after granting a motion to dismiss. *E.g.*, *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("[g]enerally, if a district court dismisses for failure to state a claim, the court should give the party one

opportunity to try to cure the problem"). The Court will therefore grant leave to the Church to file an amended complaint asserting an as-applied RLUIPA claim.

## II.     Equal Protection Claim

The Church also alleges that the parking ordinance, on its face and as applied, violates its equal protection rights under the 14th Amendment. An ordinance that targets a suspect class or addresses a fundamental right is subject to strict scrutiny, which requires that the ordinance be tailored narrowly to facilitate a compelling state interest. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637 (7th Cir. 2007). If no fundamental rights or suspect categories are at issue, an ordinance is "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

The Church argues that strict scrutiny applies to its equal protection claim because the parking ordinance regulates on the basis of religion, which the Church asserts is a suspect class, and affects a fundamental right. Pl.'s Resp. 15, June 7, 2017, ECF No. 25. The City does not address the Church's argument that the Ordinance targets a suspect class, but it asserts that strict scrutiny does not apply because under Seventh Circuit law, land use regulations on religious assemblies do not affect a fundamental right unless they cause grave interference with or compel acts undeniably at odds with important religious tenets. Def.'s Memo. in Supp. of Mot. to Dismiss 8, ECF No. 18 (citing *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 766 (7th Cir. 2003)).

A suspect class is one that "possess[es] an immutable characteristic determined solely by the accident of birth" or is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to

command extraordinary protection from the majoritarian political process." *St. John's*, 502 F.3d at 638 (citing *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973)). The Seventh Circuit has held that although a religion may qualify as a suspect class, "strict scrutiny has been reserved for laws that 'discriminate among religions.'" *St. John's*, 502 F.3d at 638 (citing *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 339 (1987)).[10] *See also C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903, 910-11 (N.D. Ill. 2001) (applying rational basis review to ordinance affecting churches because "classification based upon the religious preferences of an individual may trigger heightened scrutiny but a classification that merely touches upon religion in general is subject to the standard rational basis equal protection review").

The Seventh Circuit has also held that "the fundamental rights theory of heightened equal protection scrutiny applies only to laws that effect grave interference with important religious tenets or affirmatively compel congregants to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Civil Liberties for Urban Believers*, 342 F.3d at 766 (citing *Griffin High School v. Ill. High Sch. Athletic Ass'n*, 822 F.2d 671, 674 (7th Cir. 1987)) (internal quotations omitted). The Court further held that land use regulations which present obstacles to a church's ability to locate on a specific plot of land "do not regulate the right, let alone interfere with the ability, of an individual to adhere to the central tenets of his religious beliefs." *Id.*

---

[10] In two cases that were decided before *St. John's*, two courts in the Northern District of Illinois applied strict scrutiny to ordinances that classified on the basis of religion but did not discriminate among religions. *See Vineyard Christian Fellowship*, 250 F. Supp. 2d at 976; *Love Church v. City of Evanston*, 671 F. Supp. 515, 518-19 (N.D. Ill. 1987). In *Vineyard Christian Fellowship of Evanston*, though, the Court acknowledged that this approach was the minority approach among courts. 250 F. Supp. 2d at 978 ("The court acknowledges that few other courts have opted to apply strict scrutiny to zoning ordinances in analogous cases.").

Here, because the City's Ordinance does not discriminate among religions and does not gravely interfere with or regulate the ability of the Church's members to adhere to the central tenets of their religious beliefs, the Court will apply rational basis review rather than strict scrutiny review. *See St. John's*, 502 F.3d at 638; *Civil Liberties for Urban Believers*, 342 F.3d at 766. Under rational basis review, the plaintiff must prove that "(1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to the legitimate state interest." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009) (citing *Smith v. City of Chicago*, 457 F.3d 650-51 (7th Cir. 2006)).

The City argues it is entitled to summary judgment on the equal protection claim because the Church fails to identify any similarly situated comparator or to state plausible facts sufficient to overcome the highly deferential rational basis standard of review. Def.'s Memo. in Supp. of Mot. to Dismiss 10, ECF No. 18. Government conduct fails rational basis scrutiny only "if no sound reason for the action can be hypothesized," or it is "wholly impossible to relate to legitimate governmental objectives." *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005). The plaintiff must "negative every conceivable basis" that might support the challenged law, and it is "entirely irrelevant" whether the conceived reason actually motivated the law maker. *Monarch Beverage Co., Inc. v. Cook*, 861 F.3d 678, 681 (7th Cir. 2017) (citing *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993)). "A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Srail*, 588 F.3d at 946 (citing *City of Chicago v. Shalala*, 189 F.3d 598, 606 (7th Cir. 1999)).

The City argues that the Ordinance's varied parking requirements for religious assemblies, libraries, and theaters are rationally related to the legitimate state interest of providing for adequate parking. Def.'s Memo. in Supp. of Mot. to Dismiss 10, ECF No. 18. The City states that churches, theaters, and libraries draw different sized crowds, at different times in the day, and in different areas of the city. Therefore, the City argues, it is rational to distinguish among the land uses when determining parking requirements.[11] For largely the same reasons that the Church's facial challenge failed, the Court finds that this is sufficient for the Ordinance to pass the highly deferential standard of rational basis review. *See Civil Liberties for Urban Believers*, 342 F.3d at 766-67 (holding that ordinance that treated churches differently was rationally related to Chicago's legitimate interest in regulating land use within its city limits and therefore complied with the Equal Protection clause). It is not in the least "irrational" for the City to anticipate that the parking demands of a church will be materially different than those of a library. (And again, theaters might be a better comparator in regard to parking demands, but no theaters are permitted within Subarea B, so they provide no basis for a complaint of unequal treatment by the Church). The Court therefore grants the City's motion for summary judgment on the equal protection claim.

*      *      *

For the reasons stated above, the Court grants the City's motion for summary judgment on the RLUIPA equal-terms claim (Count I) and the 14th Amendment equal protection claim

---

[11] In support of its equal protection claim, the Church does not argue that the City's Ordinance cannot survive rational basis review. Rather, it applies strict scrutiny review and argues that the City cannot show that the Ordinance and the City's application of the Ordinance are narrowly tailored to further a compelling government interest. Pl.'s Resp. 16-17, June 7, 2017, ECF No. 25. Because the proper standard of review is rational basis, *see supra* at 19, the Court does not address the Church's arguments that the Ordinance fails strict scrutiny review.

(Count II).  The Court denies the Church's motion for summary judgment and grants the Church

leave to file an amended complaint asserting an as-applied RLUIPA claim.


Date: September 22, 2017

John J. Tharp, Jr.
United States District Judge