# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IMMANUEL BAPTIST CHURCH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17 C 00932 |
| CITY OF CHICAGO. | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

The Court's prior opinion in this case addressed the question "when is a church like a library?" Now the Court must address a more narrow question: "When is *this* church like *that* library?" The answer might be: "when it comes to parking." Immanuel Baptist Church's original Complaint against the City of Chicago failed because it did not adequately allege that the City's parking requirements for religious and secular assemblies are facially unequal in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc (2000). In its Amended Complaint, the Church argues that even if the requirements are equal on their face, they are applied unequally. The City moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the Church adequately identified a secular comparator with similar parking needs and alleged that the City treats the comparator more favorably, the Court denies the City's motion.

## BACKGROUND

### I. Procedural History

The Church filed its first Complaint in February 2017, alleging that the City's parking regulations facially violate RLUIPA's equal-terms provision and deny the Church equal protection under the Fourteenth Amendment. *See Immanuel Baptist Church v. City of Chicago*,

283 F. Supp. 3d 670, 670 (N.D. Ill. 2017). The parties filed cross-motions for summary judgment. The Court granted the City's motion for summary judgment on the RLUIPA claim because the Church failed to present evidence to support its facial challenge. *Id.* at 681. The Court also granted the City's motion for summary judgment on the equal protection claim, but granted the Church leave to file an amended complaint asserting an as-applied RLUIPA claim.[1] *Id.* The Church filed its Amended Complaint in October 2017 asserting an as-applied RLUIPA claim and again asserting an equal protection claim.[2] The City moved to dismiss the Amended Complaint under Rule 12(b)(6). Def.'s Mot. to Dismiss, ECF No. 45. For the reasons discussed below, the Court denies the motion.

II.   Facts

Immanuel Baptist Church meets at 1443 W. Roosevelt Road (the "Property") in Chicago, Illinois. The Property, which the Church has rented since 2011, is approximately 3,900 square feet and consists of a worship center and classrooms. Am. Compl. ¶¶ 20, 21. The Property does not offer off-street parking, but street parking is widely available in the surrounding area and many of the Church's members choose to walk or take public transit. *Id.* at ¶ 25. The Church facilitates a variety of ministries and religious exercises for its 60-person congregation at the Property, including weekly worship assemblies, preaching, pastoral counseling, prayer meetings, singing and musical performances, baptisms, weddings, communion, bible studies, service projects, evangelism, and financial giving. *Id.* at ¶ 48.

---

[1] The Amended Complaint continues to assert a facial challenge to the statute as well. Am. Compl. ¶ 89. As the Court has already granted summary judgment to the City on that claim, it is not further addressed here.

[2] The Court granted summary judgment to the City on the Church's Fourteenth Amendment equal protection claim. As such, the Court will not consider the reassertion of that claim in the Amended Complaint.

In 2016, the Church reached an agreement to purchase the Property from its owner, but the Church's lender required a determination regarding legal parking requirements before the deal could close. *Id.* at ¶ 31. The City subsequently informed the Church that, while religious assemblies are a permitted use at the Property, the Church could not be established without meeting parking requirements listed in the Chicago Zoning Ordinance, section 17-10-0207. *Id.* at ¶¶ 61, 62. That ordinance requires religious assemblies to have one off-street parking space for every eight seats in the main auditorium. *Id.* at Ex. K.

The Church has pursued several avenues in attempting to meet the parking requirements. One possibility was to lease a nearby unused parking lot owned by the Chicago Housing Authority ("CHA"). The CHA indicated that due to regulations, any lease could be for a maximum of 364 days at a time. *Id.* at ¶ 35. Patrick Murphey, the City's Assistant Commissioner, told the Church that a 364-day lease would be insufficient and added that the City must "determine if a religious assembly use is something it wants to promote on a commercial corridor such as Roosevelt Road." *Id.* at ¶ 36. Because the Church has been unable to work out parking arrangements, its lender has not provided the financing needed to purchase the Property. *Id.* at ¶¶ 43, 45.

The Church alleges that the City applies its parking requirements unequally and points to two comparators in support of its claim. The first, the Rudy Lozano Branch of the Chicago Public Library, is located a few blocks from the Church at 1805 S Loomis Street. The 18,000 square foot library has two meeting rooms available to the public, one with a capacity for 60 people and another with a capacity for 20 people. *Id.* at ¶¶ 67, 74. The rooms have held assemblies such as public forums, community meetings, and political meetings. *Id.* at ¶ 74. The library also holds a number of regular assemblages throughout the week, including "Teen

Tuesday," "Super-Duper Playtime," "Superhero Story Time," and "Super Experiments." *Id.* at ¶ 75. In addition, the library offers general seating for approximately 150 patrons. *Id.* at ¶ 73. According to the City's zoning code, a library of this size should provide 14 off-street parking spots.[3] The Lozano Library currently provides none. *Id.* at ¶¶ 68, 69.

The Church also identifies as a second comparator the Taylor Street Library, a recently approved construction project located in the same zoning district as the Church. The project will consist of the 14,000 square foot library as well as 73 residential units. The City's zoning ordinances require that a project of this size include at least 83 parking spaces, but the project is slated to have only 26 in total. *Id.* at ¶ 78-81.[4] The City has allegedly denied the Church's request for similar exceptions to be made to its own parking requirements. *Id.* at ¶ 83.

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" where the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, the Court construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012). The Court finds that the Church has adequately identified a comparator and pleaded facts illustrating that the comparator was treated

---

[3] With reference to "Cultural Exhibits and Libraries," the parking ordinance requires no off-street parking for buildings of 4,000 square feet or less and one off-street space for each additional increment of 1,000 square feet. Am. Compl. Ex. K.

[4] The City contests these numbers and claims that the project will actually provide 34 parking spaces, nine of which will be for library patron use. Def.'s Memo. in Supp. of Mot. to Dismiss 9 n. 2, ECF No. 46. Even accepting these numbers, the City admits that the project still falls short of the 11 required spots for a library of that size.

more favorably, as required by RLUIPA. Accordingly, the Court denies the City's motion to dismiss.

The Church argues that the City has violated the "equal-terms" provision of RLUIPA by providing libraries with ample exceptions to the City's parking requirements, while refusing to provide such exceptions for the Church. Am. Compl. ¶ 86. RLUIPA's equal-terms provision bars a government from imposing or implementing "a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The statute is violated "whenever religious land uses are treated worse than comparable nonreligious ones, whether or not the discrimination imposes a substantial burden on the religious uses." *Digrugilliers v. Consol. City of Indianapolis*, 506 F.3d 612, 616 (7th Cir. 2007) (citing *Vision Church, United Methodist v. Vill. of Long Grove*, 468 F.3d 975, 1002-03 (7th Cir. 2006)); *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1308 (11th Cir. 2006); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1229-31 (11th Cir. 2004).

In *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, the Seventh Circuit held that an equal-terms violation exists if a religious land use is treated less favorably than a secular land use that is similarly situated as to the relevant zoning criterion. 611 F.3d 367, 370-372 (7th Cir. 2010) (en banc); *see also Affordable Recovery Hous. v. City of Blue Island*, No. 12-cv-4241, 2016 WL 5171765, at *14 (N.D. Ill. Sept. 21, 2016) ("According to the Seventh Circuit, a regulation will violate the 'equal terms' provision of RLUIPA only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to the accepted zoning criteria.") (citing *River of Life*, 611 F.3d 367). A plaintiff need not demonstrate unequal treatment in all respects between two institutions, but only that they are

"similarly situated in all relevant respects." *Vision Church*, 468 F.3d at 1003. For example, "if a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision." *River of Life*, 611 F.3d at 371.

As explained in the Court's prior opinion, an equal-terms violation may occur in one of three ways. *Immanuel Baptist Church,* 283 F. Supp. 3d at 676. First, a statute can facially differentiate between religious and nonreligious assemblies or institutions. Second, a facially neutral statute can be "gerrymandered" to place a burden solely on religious, as opposed to nonreligious, assemblies or institutions. Third, a truly neutral statute can be selectively enforced against religious, as opposed to nonreligious, assemblies or institutions. *Irshad Learning Ctr. v. Cty. of DuPage*, 937 F. Supp. 2d 910, 932 (N.D. Ill. 2013) (citing *Vision Church*, 468 F.3d at 1003). Although the Church previously failed to establish a facial violation of RLUIPA, its Amended Complaint adequately alleges the third type of violation, *i.e.* that the City applies its parking regulations unequally by granting exemptions to libraries but not to religious assemblies.

To establish a prima facie equal-terms violation, the plaintiff must come forward with evidence of a similarly situated secular comparator that is more favorably treated.[5] *Immanuel Baptist Church*, 283 F. Supp. 3d at 677-78. Therefore, to survive a motion to dismiss, the Church must allege facts that plausibly show the existence of a similarly situated secular comparator that is treated better than the Church. Because the Church's RLUIPA claim centers on the City's off-street parking regulations, the comparator must be similar to the Church with regard to that

---

[5] RLUIPA contains a burden-shifting provision that shifts the burden of persuasion to the defendant but only after the plaintiff produces evidence sufficient to establish a prima facie violation. According to the statute, "if a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim." 42 U.S.C. § 2000cc-2(b).

zoning criterion—the need for off-street parking. At the pleading stage, however, a plaintiff is "not required to provide a detailed comparison that establishes unequal treatment in comparison to a nonreligious user." *Irshad Learning Ctr. v. Cty. Of DuPage*, 804 F. Supp. 2d 697, 713 (N.D. Ill. 2011). Here, the Church alleges that two secular comparators receive more favorable treatment from the City—the Lozano Library and the Taylor Street Library. The City argues that neither is sufficiently similar to the Church with respect to parking needs, and that regardless, the City has not treated either more favorably than the Church. The Church has pleaded facts suggesting that the Lozano Library is a suitable comparator and that the City treats it more favorably in terms of parking requirements. Because these allegations have facial plausibility, the Court denies the City's motion to dismiss. The Church has failed, however, to show that the Taylor Street Library has sufficiently similar parking needs. The Court therefore need not address whether the City treats that library more favorably.

## I. Lozano Library

The Church has adequately pleaded that it is similarly situated to the Lozano Library with respect to its need for off-street parking. Drawing all inferences in favor of the plaintiff as the Court must at this stage, it is plausible that both the Church and the Lozano Library generate "groups of people coming and going at the same time" such that their respective parking needs are the same. *River of Life*, 611 F.3d at 373. Specifically, the Church points to the Lozano Library's public meeting rooms which allow groups of up to 60 people—the number of members in the Church's congregation—to assemble, as well as several weekly events hosted by the Library. Am. Compl. ¶¶ 74, 75. The City argues that the Church failed to allege that meetings of large groups happen with any regularity or that weekly events attract large crowds. Def.'s Memo. in Supp. of Mot. to Dismiss 8, ECF No. 46. As other courts have noted, however, an identical

comparator is not required. *See Bensalem Masjid, Inc. v. Bensalem Township*, No. 14-6955, 2015 WL 5611546, at *5 (E.D. Pa. Sept. 22, 2015) (denying defendant's motion to dismiss and rejecting defendant's argument that "Plaintiff must identify an identical comparator"). Further, it is unreasonable at this stage in the litigation to expect the Church to accurately identify either the exact number of individuals attending weekly events or the precise frequency of large group meetings. A complaint need only contain "'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Church has satisfied this burden.

The City contends that the Lozano Library is nevertheless an improper comparator because it is not located in the Church's zoning district. Def.'s Memo. in Supp. of Mot. to Dismiss 5, ECF No. 46. The Library's location in a different district, however, does not necessarily diminish the likelihood that its particular parking needs are similar to those of the Church; notably, the parking ordinance draws no distinction between parking requirements applicable to the two locations. The City cites no authority for the proposition that comparators must be located within the same zoning district and places too much weight on this Court's prior statement that "whether the parking required of a particular library or theater within the same zoning area as the Church was less onerous would present an as-applied, not a facial challenge." *Immanuel Baptist Church*, 283 F. Supp. 3d at 678. The Court made this statement in the context of distinguishing a facial challenge from an as-applied challenge. It was merely one example of what an as-applied challenge might look like, not a final declaration limiting comparators to those within the same district. Differential treatment with respect to the relevant zoning criterion ***within*** the same district might be more difficult to justify than differential treatment between

8

districts, but that does not mean that comparators in a different district cannot be deemed "comparable" for purposes of applying RLUIPA's equal-terms requirement. To so hold would effectively allow the City to immunize itself from equal-terms challenges by balkanizing its zoning districts into thousands of "micro-zones" that are so small that as a practical matter they could contain no similarly situated comparators. Moreover, contrary to the City's assertion, the Court's prior decision did not reject theaters as a comparator "because they would not be permitted to operate at the Plaintiff's location." Def.'s Reply 3, ECF No. 49. In fact, the Court essentially assumed that theaters *were* a valid comparator, but rejected the facial challenge because theaters were not given favorable ***treatment***. *See Immanuel Baptist Church*, 283 F. Supp. 3d at 679 ("Regardless of whether the parking needs of churches and theaters are comparable, the Court finds that the Church cannot show less equal treatment than theaters . . . Churches are treated more, not less, favorably with respect to parking in Subarea B than are live theaters; no matter how much parking a live theater offers, it is not permitted to operate at that location.").

The Court is also unpersuaded by the City's argument that the Library is not a suitable comparator given its location on a street "well served by public transit" where "foot traffic is encouraged." Def.'s Memo. in Supp. of Mot. to Dismiss 6, ECF No. 46. Even if the Court were to follow the City's suggestion and take judicial notice of these facts (which appear outside the Church's Amended Complaint)[6], it does not necessarily follow that the Library would no longer be sufficiently comparable to the Church. In fact, the Church persuasively counters that its own

---

[6] As the City points out, courts may take judicial notice of geographic facts. See *In re Boyer*, 109 U.S. 629, 631 (1884) (taking judicial notice of canal's size and length); *Lowrance v. Pflueger*, 878 F.2d 1014, 1018 (7th Cir.1989) (taking judicial notice of distances between two locations). The effect of nearby public transportation stops on the need for parking is not, however, merely a geographic fact.

location in an area surrounded by street parking and equally close to public transportation would similarly reduce its need for off-street parking. Pl.'s Resp. 7, ECF No. 47; Am. Compl. at ¶ 22. Regardless, this analysis is more suitable for a later stage in the litigation. For purposes of a motion to dismiss, it suffices that the Church has adequately pleaded facts regarding large-scale assembly uses at both institutions, allowing the Court to reasonably infer that their parking needs are sufficiently similar. *See Iqbal*, 556 U.S. at 678 (2009).

The analysis does not, however, end there. A plaintiff asserting a RLUIPA equal-terms violation must also establish that it is treated on "less than equal terms" with the identified comparator. 42 U.S.C. § 2000cc(b)(1). Accepting the facts in the Amended Complaint as true, it is more than plausible that the City has treated the Church less favorably than the Lozano Library. According to the Church, the City has "made ample exceptions to its parking ordinance for libraries but has refused to do so for the Church." Am. Compl. ¶ 9. The Church also alleges that the Lozano Library should have 14 parking spaces to legally operate but offers none, and that the City denied that it could legally disregard its zoning ordinance when the Church asked for similar exceptions. *Id.* at ¶¶ 68, 83. These factual allegations are enough to plausibly state a claim.

The City attempts to counter this showing by pointing out that the Amended Complaint states that the Lozano Library opened in 1989. *Id.* at ¶ 67. It appears to argue that there can be no unequal treatment challenge given that "land-use regulations change over time and once-conforming buildings may become nonconforming." Def.'s Memo. in Supp. of Mot. to Dismiss 7, ECF No. 46. In other words, the City argues that its requirement that the Church, but not the Library, provide parking is not the result of unequal treatment, but instead the result of equal application of parking regulations which have changed over time. If that turns out to be true, the

City may prevail in its argument that the library is not a valid comparator for the Church. But at this juncture the City offers no more than the possibility that different zoning regimes may account for differences in treatment; facts about the history of the City's parking requirements lie outside the Amended Complaint and mere possibility does not defeat a motion to dismiss. Arguments about temporally distant land-use decisions are therefore premature at this stage in the litigation.[7] Indeed, none of the cases cited by the City in support of this argument involve motions to dismiss, and all turn on the application of more demanding standards. In *Vision Church,* the Seventh Circuit concluded that there was no unequal treatment where comparators "were subject to different standards because of the year in which their special use applications were considered." 468 F.3d 975 at 1003. That case, however, involved a motion for summary judgment which the district court granted only after discovery had taken place. *Vision Church, United Methodist v. Vill. of Long Grove*, 397 F. Supp. 2d 917, 924 (N.D. Ill. 2005). More to the point, the district court denied the defendant's motion to dismiss earlier in the litigation. *See* Minute Order, *Vision Church*, 397 F. Supp. 2d 917 (No. 1:03-cv-05761), ECF No. 44 (pointing out that the plaintiff's allegation "certainly" stated a claim under RLUIPA and that the parties'

---

[7] For the same reason, the Court rejects the City's argument that it treats the Library and the Church equally because it has not taken enforcement actions against either. Def.'s Reply 5, ECF No. 49. Apart from the fact that the Amended Complaint alleges that, by refusing to grant a comparable exception to the Church, the City is effectively enforcing the parking ordinance selectively, the City's argument about the enforcement history of its parking ordinance rests on facts that do not appear in the Amended Complaint; taking them into consideration would be "improper" when ruling on a motion to dismiss. *Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 954 (7th Cir. 2009). Further, the Court rejects out of hand the City's argument in the alternative that RLIUPA claims regarding enforcement practices are not available under the text of the statute, which addresses how local governments "impose or implement a land use regulation." Def.'s Reply 5, ECF No. 49. As previously stated, the Seventh Circuit has explicitly acknowledged that an equal terms violation occurs when a neutral statute is "selectively **enforced** against religious, as opposed to nonreligious assemblies or institutions." *Vision Church*, 468 F.3d at 1003 (citing *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1308 (11th Cir.2006)) (emphasis added).

arguments were "more appropriately directed to summary judgment" which requires "a more developed factual record"). The same is true of *Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic District Commission,* 768 F.3d 183, 197 (2d Cir. 2014) (grant of motion for summary judgment affirmed where evidence showed that a land use decision regarding the secular comparator was made in 1965 by "a different land use authority pursuant to a different land use regime").

The City also relies on *Third Church of Christ, Scientist v. City of New York* for its statement that "organizations subject to different land-use regimes may well not be sufficiently similar to support a discriminatory-enforcement challenge." 626 F.3d 667, 671 (2d Cir. 2010). True enough, but that differences in land-use regimes *may* be relevant to a determination of whether the comparators are sufficiently similar does not establish that, in this instance, there were such differences or that they would render the Lozano Library and the Church dissimilar as a matter of law. Notably, after discovery, the district court in that case ***granted*** a permanent injunction against the City of New York's efforts to selectively enforce the relevant zoning criterion on the plaintiff church. *Id.* at 669. The Second Circuit then affirmed the district court's grant of the injunction against the City, concluding—contrary to the City of Chicago's argument here—that where the City enforced its code against the church but not the similarly situated comparator hotels, there was a violation of RLUIPA's equal-terms provision. *Id.* at 672 (finding that the City had "responded differently to the allegations of non-conforming use" by the church and the comparators). *Third Church of Christ, Scientist* supports, rather than undermines, the Church's claim in this case.[8]

---

[8] The City's reliance on *Petra Presbyterian Church v. Village of Northbrook* is equally inapt because that case involved a facial challenge (as opposed to an as-applied challenge, at issue here) and did not discuss temporally distant land-use decisions. No. 03 C 1936, 2003 WL

## II. Taylor Street Library

On the other hand, the Church has not alleged that the Taylor Street Library has similar off-street parking needs. Its Amended Complaint is devoid of any facts pertaining to how the future library will be used. The Church notes that "the library is still under construction and there is no public information about the meeting rooms and assemblies" but that the new project will "no doubt create traffic and parking concerns." Pl.'s Response 12, 13-14, ECF No. 47. This could be true whether the project included a library or not, however, and it says nothing about whether those "concerns" are comparable to those generated by the operations of the Church. The Church must plead facts showing that "it is plausible, rather than merely speculative" that the Taylor Street Library will have similar parking needs. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citing *Lang v. TCF Nat. Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). By invoking the prospects that the unfinished Taylor Street project will create such "concerns," the Church edges back toward a facial challenge, so it bears repeating that not all libraries and churches are comparable with regard to their parking needs. The bare fact that the City is building a new library does not by itself adequately show that there will be "groups of people coming and going at the same time" at the location as there is at the Church. *River of Life*, 611 F.3d at 373. Because the Church has therefore failed to demonstrate that the Taylor Street Library will have similar off-street parking needs, it is not a suitable comparator under RLUIPA and the Court need not evaluate whether it is treated more favorably. Regardless, comparison of the Church to the Lozano Library is sufficient to defeat the City's motion to dismiss.

---

22048089, at **8, 12 (N.D. Ill. Aug. 29, 2003), report and recommendation adopted, No. 03 C 1936, 2004 WL 442630 (N.D. Ill. Mar. 8, 2004).

\* \* \*

For the reasons stated above, the Court denies the City's motion to dismiss. The Church's RLUIPA claim may proceed on an as-applied basis.

Date: September 26, 2018

John J. Tharp, Jr.
United States District Judge