### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IMMANUEL BAPTIST CHURCH,

Plaintiff,

v.

CITY OF CHICAGO,

Defendant.

Case No. 17-cv-0932

Judge Mary M. Rowland

### MEMORANDUM OPINION AND ORDER

Immanuel Baptist Church brings this suit against the City of Chicago alleging that the City's parking regulations violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc (2000). The parties have filed cross-motions for summary judgment. For the reasons stated below, the Church's motion for summary judgment [183] is denied. The City's summary judgment motion [195] is granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the

1

adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017); *see also Chagoya v. City of Chicago*, 992 F.3d 607, 615 (7th Cir. 2021). The Court treats the motions separately. *Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011). *See also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d

2

405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND

### I. Parties and Procedural History

In its Third Amended Complaint ("TAC"), Plaintiff Immanuel Baptist Church ("the Church") alleges that Defendant City of Chicago ("the City") "imposes more demanding parking requirements on religious assembly uses than on non-religious assembly uses." (Dkt. 107, TAC ¶1). The Church alleges that it was unable to satisfy the City's increased parking requirements until June 2019 when the City granted the Church a 100 percent parking reduction under a newly enacted City ordinance passed on March 13, 2019. *Id*. ¶2.

The TAC contains three counts: violation of RLUIPA's equal terms provision (Count I); violation of the equal protection clause of the Fourteenth Amendment (Count II); and violation of RLUIPA's substantial burden provision (Count III). The Court previously granted the City's motion for summary judgment on the equal protection claim and on the facial challenge under RLUIPA. Therefore the remaining claims are for violation of RLUIPA's substantial burden provision (Count III) and violation of RLUIPA's equal terms provision (as-applied only) (Count I).[1]

---

[1] In 2017, the Court granted summary judgment to the City on the Church's facial challenge under RLUIPA's equal terms provision. *Immanuel Baptist Church v. City of Chicago*, 283 F. Supp. 3d 670 (N.D. Ill. 2017). In 2018, the Court denied the City's motion to dismiss the Church's RLUIPA as-applied equal terms provision claim. *Immanuel Baptist Church v. City of Chicago*, 344 F. Supp. 3d 978 (N.D. Ill. 2018). In July 2020, the Court denied the City's motion to dismiss the RLUIPA substantial burden claim. (Dkt. 149). The present opinion assumes familiarity with the Court's prior rulings and the procedural history of this case.

## II. Background Facts

The Church has been operating at 1443 W. Roosevelt Road, Chicago, Illinois 60608, and is an Illinois not-for-profit corporation. (PSOF ¶1).[2] The Church moved to the property in August 2011. (DSOF ¶ 10). Nathanial Carter is the Church's Pastor. (PSOF ¶8). The Church is located in Planned Development 896 ("PD896"). (DSOF ¶11). On September 27, 2011, the City's Department of Housing and Economic Development issued a letter to the property owner stating that the site of the Church is located in residential PD896, that Exhibit 1A of the PD zoning code "lists churches…as permitted uses for all subareas," and "[t]herefore, the establishment of a religious assembly use" at the site was permitted. (PSOF ¶ 11).[3]

The Church did not provide off-street parking before the summer of 2018. (DSOF ¶12). Section 17-10-0200 of the Chicago Zoning Ordinance addresses off-street parking requirements. The parking requirements for the Church's Property were

---

[2] The facts herein are undisputed unless otherwise noted. Because neither party fully complied with Local Rule 56.1, the Court will discuss compliance as it is relevant. "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.,* 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019) (citation omitted). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics*, 919 F.3d at 414 (internal citation and quotations omitted). *See also Zuppardi v. Wal-Mart Stores, Inc.,* 770 F.3d 644, 648 (7th Cir. 2014). The Court has discretion in applying Local Rule 56.1: "it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion." *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (cleaned up).

[3] The City responds to PSOF ¶ 11 by stating that it "[d]ispute[s] the characterization that the Church was assured that zoning would not be a problem." The City does not dispute the portion of PSOF ¶ 11 describing and citing to the September 2011 letter.

4

governed by 17–10–0207 of the Ordinance, which set forth requirements for different groups.

In 2016, the Church entered into a sales contract for 1443 and the building next door at 1447 W. Roosevelt Road, for $750,000. (PSOF ¶9, "2016 Sales Contract"). The sellers of the property (Mrs. Almarie Burton and Mr. Thomas Ellis) preliminarily accepted the Church's offer to purchase the two properties on or around April 4, 2016. (DSOF ¶18).[4] The 2016 Sales Contract was "contingent upon the Buyer receiving written confirmation that the subject property conforms with all governmental zoning ordinances and laws to be suitable…for the Buyer's intended usage of the property." (*Id.* ¶20). So even after the seller provided preliminary acceptance of the final offer to purchase the properties, Pastor Carter recognized that "[t]here are still many hurdles to clear and lots of work ahead of us. Please pray for favor with the alderman on parking and zoning issues…." (*Id.* ¶25). The Church's mortgage lender wanted independent confirmation from the City that the Church did not require parking prior to closing the deal. (*Id.* ¶29). On April 11, 2016, Pastor Carter was continuing to make attempts to secure shared parking with nearby properties. (*Id.* ¶19). The Church never secured off-street parking before its anticipated June 2016 closing date and on July 26, 2016, Patrick Murphey, Department of Planning and Development Assistant Commissioner, told the Church's lender in an email that the City "will not support a church being established at this location without the required parking." (*Id.* ¶¶31,

---

[4] Almarie Burton and Thomas Ellis were the owners and landlords of 1443 W. Roosevelt Road throughout the relevant time until the Church bought the property in 2018. They have owned 1447 W. Roosevelt throughout the relevant time during this litigation. (PSOF ¶25).

37). This prevented the parties from closing on the 2016 Sales Contract. (PSOF ¶12).[5] On or around the same time that Murphey sent his July 26, 2016 email, he "committed to meeting with Pastor Carter and the CHA to determine if a shared parking arrangement could be reached." (DSOF ¶ 38).

In September 2018, after the Church secured a parking arrangement approved by the City, the Church bought 1443 W. Roosevelt Road from Mrs. Burton and Mr. Ellis for $407,500 but did not buy 1447 W. Roosevelt Road. (PSOF ¶26). In March 2019, the City passed a new ordinance, making the Church potentially eligible for a complete parking reduction because of its proximity to a rapid transit bus line. (DSOF ¶69). In May 2019, Murphey recommended to the Church's attorney that the Church apply for the parking reduction. (*Id*. ¶70). The Church applied for the parking reduction on or around June 13, 2019. (*Id*. ¶71). On June 17, 2019, the City approved a minor change to PD896 that completely reduced the Church's parking requirements. (*Id*. ¶72).

## ANALYSIS

### I.    RLUIPA's Substantial Burden Provision

Under RLUIPA's substantial burden provision:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--
> (A) is in furtherance of a compelling governmental interest; and

---

[5] Later, on August 30, 2016, Murphey sent a formal letter to Carter that the "subject property is zoned [PD896]" and "off-street parking for a church shall be provided in accordance with [PD896] and Section 17-10-0207-1 of the Chicago Zoning Ordinance, at a ratio of one space for every eight seats in the assembly areas." (Carter Decl. (Dkt. 107-1), Exh. 5).

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). The City argues that the Church has failed to establish jurisdiction, that the Church's religious exercise was not implicated, that the Church has failed to demonstrate a substantial burden, and that the City did not act arbitrarily or in bad faith. As in *World Outreach Conf. Ctr. v. City of Chicago*, the Court "can ignore the 'unless' clause, as the City's argument is limited to denying that it imposed a substantial burden on [the Church's] religious activities; it does not assert 'a compelling governmental interest' in doing so or deny that [the Church] is indeed a religious institution." 787 F.3d 839, 840 (7th Cir. 2015).

## A. Jurisdiction

The City argues that the Church has failed to establish jurisdiction for its substantial burden claim under RLUIPA.[6] The "scope of application" for that provision states in relevant part:

> This subsection applies in any case in which...the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

42 U.S.C. § 2000cc(a)(2)(C). The City argues that there was no "individualized assessment" in this case.

---

[6] In response to the City's jurisdictional challenge, the Church countered that this challenge to its equal terms claim was unfounded. The City agreed, asserting that the Church did not satisfy "the jurisdictional elements to proceed with its *substantial burden claim*." (Dkt. 199 at 2-4, emphasis added).

The City relies primarily on *Lighthouse Cmty. Church of God v. City of Southfield*, 2007 WL 30280 (E.D. Mich. Jan. 3, 2007), where the City of Southfield required the church to have a certain number of parking spaces before it would issue a certificate of occupancy. *Id*. at *2. In finding the city violated RLUIPA, the court explained that whether an "individualized assessment" occurred for jurisdictional purposes looks to whether the government decision involved "criteria that are at least partially subjective in nature." *Id*. at *5 (citation and quotations omitted). *See also Westchester Day Sch. v. Mamaroneck*, 417 F. Supp. 2d 477, 541-42 (S.D.N.Y. 2006) ("the determination of whether the governmental action is an 'individualized assessment' depends on whether the decision was subjective in nature."). The *Lighthouse* court found that there was no basis to challenge the application of the parking regulation— no "individual assessment" had been performed. It was a matter of math: the church had 48 spots but needed 95 to comply with the regulations. 2007 WL 30280 at *6. To the contrary, the court did have jurisdiction to consider the zoning board's denial of the church's application for a parking variance. This decision did involve an "individualized assessment" thus satisfying jurisdiction under RLUIPA's substantial burden provision. *Id*. at *7. Another court has explained that while a parking ordinance may "be a law of general and neutral numerical application," the city's application of the ordinance to a church based on consideration of the church's individual case there was an "individualized assessment." *Church of Scientology of*

*Georgia, Inc. v. City of Sandy Springs, Ga.*, 843 F. Supp. 2d 1328, 1352 (N.D. Ga. 2012).[7]

The City argues the Church did not request a variance, rather it was "forced" to request a parking compliance letter from the City in order to meet its lender's requirements. Thus the City simply "determine[d] that Plaintiff did not comply with the parking regulation." (Dkt. 195-1 at 9). But regardless of whether the Church requested a variance or a parking compliance letter, the record demonstrates that the City's decision was subjective and not a mere generic calculation. The City is correct that the zoning ordinance required the Church to have a certain number of off-street parking spots. *See* DSOF ¶16; M.C.C. § 17-10-0207. But in early June 2016, the City's Zoning Department told Carter that the Church's lack of parking "may not be an issue now, but will be one in the future….". (DSOF ¶27). On June 23, 2016, Carter submitted a formal request for a parking determination, including the required $150 filing fee. (DX 20). The day before submitting the request, on June 22, 2016, Assistant Commissioner Murphey advised Carter to "provide as much information as you can because that will allow us to do a more *thorough analysis*" and that "*[o]ne of the outcomes of our search **may be** that you can legally establish this church without providing parking*; we will confirm our findings in writing…" (DX 17, DX 20) (emphasis added). Once Carter submitted the formal request for a parking

---

[7] The City otherwise relies on cases involving RLUIPA claims but not addressing jurisdiction under RLUIPA's substantial burden provision, *Vision Church v. Vill. of Long Grove*, 468 F.3d 975 (7th Cir. 2006), *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005), *C.L. for Urb. Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003), *Church of Our Lord & Savior Jesus Christ v. City of Markham, Illinois*, 913 F.3d 670 (7th Cir. 2019).

compliance determination, Murphey informed Carter that "[t]here is a 30 day response time for the zoning administrator to make a determination." (DSOF ¶35; DX 15). Thirty-three days after Carter mailed his request, in July 2016, the City responded, stating that it "will not support a church being established at this location without the required parking." (DSOF ¶37). The City notified the Church and its lender of the results of its determination. (*Id*.).

The Court finds that the City's July 2016 assessment was an "individualized assessment[] of the proposed use[]" of the Church's property. The City's Zoning Department vaguely advised Carter that the Church's lack of parking "*may not* be an issue now," indicating the zoning assessment would involve discretion. Importantly, the day before the Church submitted its request for a determination, Murphey told Carter that more than one outcome was possible, and one possibility was that the Church might be able to proceed without parking (despite the ordinance). As the City acknowledges, its decision in July 2016 prevented the Church from closing on the 2016 Sales Contract. (PSOF ¶12; Dkt. 195-2). Thus the City's discretionary decision specifically applied to and impacted the Church. The Court rejects the City's jurisdictional challenge.

### B. Religious Exercise

The City next argues that the Church fails to show that the parking regulation implicates its religious exercise. The City contends that the Church "was allowed to continue in its religious exercise without interruption, even after the City discovered that the Church was not parking compliant in 2016" and the Church "was never

prevented from using the Subject Property for worship." (Dkt. 195-1 at 21-22). RLUIPA defines "religious exercise" as "any exercise of religion" including "the use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7). RLUIPA is construed broadly, so the City's argument that the Church's religious exercise was not implicated in this case is not convincing. *See* 42 U.S.C. § 2000cc-3. ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."); *see also Holt v. Hobbs*, 574 U.S. 352, 356–58, 135 S.Ct. 853, 190 L.Ed.2d 747 (2015) (noting the broad protection intended by Congress in enacting RLUIPA); *Westchester Day Sch.*, 417 F. Supp. 2d at 541-42 (explaining that RLUIPA broadly defines "religious exercise").

The City admits that the Church entered into a contract to purchase two properties, and its determination in July 2016 prevented the Church from closing on the 2016 Sales Contract. (PSOF ¶¶9, 12; Dkt. 195-2). The contract would have resulted in the Church owning both 1443 and 1447 W. Roosevelt Road. (PSOF ¶9). These properties would allow the Church to "become a fixture in the local community and aid the Church's ministries." (*Id.*)[8] Instead two years later, in 2018, the Church bought 1443 W. Roosevelt Road only and not the neighboring property. (*Id.* ¶26). While the Church technically was not prevented from "using" the property, for two years it was prevent from *owning any* of the property, and then later from owning the

---

[8] The Court deems PSOF ¶9 admitted. The City's response to this fact only states that it does not dispute "that the Church entered into the contract to purchase the two properties for $750,000." The City does not otherwise respond to or dispute PSOF ¶9.

entirety of the property it sought to purchase in 2016. *See* 42 U.S.C. § 2000cc-5(7) (the statute covers "conversion of real property for the purpose of religious exercise."). The City's argument otherwise is that the burden on the Church was not "substantial,"[9] which the Court addresses next.

### C. Substantial Burden

Although the statute does not define "substantial burden," the Seventh Circuit has explained that the term is "relative" and "depends on its magnitude in relation to the needs and resources of the religious organization in question." *World Outreach Conference Ctr. v. City of Chi.*, 591 F.3d 531, 539 (7th Cir. 2009). And more recently the Seventh Circuit explained that the burden must "seriously violate" the plaintiff's religious beliefs, but it need not render the religious exercise "effectively impracticable," as the Supreme Court "articulate[d] a standard much easier to satisfy." *Schlemm v. Wall,* 784 F.3d 362, 364 (7th Cir. 2015). Considering the evidence on summary judgment and the parties' respective burdens, the Court finds there are genuine issues of fact about whether the City imposed a substantial burden on the Church for purposes of RLUIPA.

To argue that it is entitled to judgment in its favor, the City contends that (1) the Church was not prevented from worshipping on the property; (2) any burden on the Church was "self-inflicted"; and (3) the Church failed to show any arbitrary action or

---

[9] For example, the City relies on *Living Water Church of God v. Charter Twp. of Meridian*, but that case focused on whether there was a substantial burden on the church and indeed the defendant did *not* challenge "the district court's conclusion that [the Church's] efforts *to develop and use* its own property…fall within Congress's definition of 'religious exercise.'" 258 F. App'x 729, 733 (6th Cir. 2007) (emphasis added).

12

bad faith by the City. First, whether the Church was completely prevented from using the property to worship is not the test. The burden need not render the Church's religious exercise "effectively impracticable." *Schlemm*, 784 F.3d at 364; *see also Affordable Recovery Hous. v. City of Blue Island*, 2016 WL 5171765, at *6 (N.D. Ill. Sept. 21, 2016), aff'd, 860 F.3d 580 (7th Cir. 2017).[10] Courts consider a church's needs and resources in relation to the burden and whether the church experienced "delay, uncertainty, and expense." *World Outreach,* 591 F.3d at 539; *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895, 901 (7th Cir. 2005).

The City relies on *Christian Assembly Rios De Agua Viva v. City of Burbank, Illinois*, 237 F. Supp. 3d 781 (N.D. Ill. 2017) and *Affordable Recovery Hous.,* 2016 WL 5171765. But in those cases, the religious organizations required certain permits and/or approvals in order to use property and instead of securing them first, they moved onto or entered into a contract to purchase the property. The *Christian Assembly* court found no substantial burden where the church "had *no reasonable*

---

[10] As this Court previously pointed out, ruling on the City's dismissal motion, many of the substantial-burden cases the City relies on pre-date *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014) and *Holt*, 574 U.S. 352. *Immanuel Baptist Church v. City of Chicago*, 473 F. Supp. 3d 813, 817 (N.D. Ill. 2020). Since *Holt* and *Hobby Lobby,* courts have acknowledged this less stringent standard. *See Affordable Recovery Hous.*, 2016 WL 5171765; *see also Thai Meditation Ass'n of Alabama, Inc. v. City of Mobile, Alabama,* 980 F.3d 821, 830 (11th Cir. 2020) (criticizing district court for relying on standard that would require government action to "completely prevent" religious activity and directing court on remand to consider a number of factors including whether plaintiffs showed a genuine need for new or more space, whether the City's decision-making process reflects any arbitrariness, and whether the alleged burden is attributable to the government or instead self-imposed); *City Walk - Urb. Mission Inc. v. Wakulla Cty. Fla.*, 471 F. Supp. 3d 1268, 1283 (N.D. Fla. 2020) ("a substantial burden falls somewhere on the spectrum between inconvenience to a religious exercise and complete prevention of a religious exercise.").

*expectation of using the property for religious purposes*" and assumed the risk of being denied the special use permit. 237 F. Supp. 3d at 789 (emphasis added). The *Affordable Recovery* court similarly found that the recovery home "put the cart before the horse." 2016 WL 5171765 at *8. Here, the City does not argue that the Church had no reasonable expectation of using the property for religious purposes or that it lacked a required special use permit. To the contrary, the City's September 2011 letter confirmed the Church *could* use the property for religious purposes. (PSOF ¶ 11; Carter Decl., Exh. 3).

The City argues instead that the Church had no "reasonable expectation that it would be exempt from complying with the parking regulation." (Dkt. 195-1 at 30). However there are factual disputes about when the Church knew it had to comply with the off-street parking regulation. The City says it was 2011 when the Church first moved in[11]; the Church says it was December 2015 (Dkt. 198-1 ¶ 16). It was not until July 2016 when Murphey communicated that the City would not "support a church being established at this location without the required parking." Two weeks after this email, Murphey acknowledged to Carter, "as you noted, while the religious assembly use is allowed in the relevant subarea of this planned development, the department is as yet unconvinced that it supports a non-commercial use of this type along this portion of Roosevelt Road." (Carter Decl., Exh. 4). And in June 2016 just before Carter applied for a compliance determination from the City, Murphey assured

---

[11] The City relies on DX 4 but those 2011 emails reference the property being in a 'Planned Development' and the potential need for a special use permit. But DX 4 does not reference a parking requirement or M.C.C. § 17-10-0207. The City itself says it "discovered that the Church was not parking compliant in 2016." (Dkt. 195-1 at 21).

him that "[o]ne of the outcomes of our search may be that you *can legally establish this church without providing parking.*" (DX 20, emphasis added). Further, while the court in *Affordable Recovery* was also concerned about safety, here the City does not identify any safety issue. Murphey's emails instead raise a concern about whether "religious assembly use is something [the City] wants to promote on a commercial corridor such as Roosevelt Road." (PSOF ¶ 32).

Further, the question is not limited to whether the Church was able to rent 1443 W. Roosevelt to conduct worship services, it was. The issue is whether, by being prevented from purchasing the two properties, the City created a substantial burden on the Church's ability to effectively use and convert the building and develop and grow its ministry and whether the Church's resources and money spent attempting to comply with the parking regulation constituted a substantial burden.

Next the City argues that any burden was "self-inflicted". However whether the Church acted diligently to secure parking is a factual question. The City's September 2011 letter confirmed that religious assembly use at the property was permitted. The letter does not mention parking requirements. In an April 2016 email, Carter reported that the "Alderman couldn't find anything in the PD896 document that stated the required parking" and the Alderman informed him that "the only point where this would be an issue is when we went to pull a permit with the Dept of Buildings." (DSOF ¶17; DX 6). In May 2016, the Alderman seemed "willing to help us find a work around on the parking situation." (DSOF ¶22). In June 2016, the City's Zoning Department told Carter that the Church's lack of parking "*may not be an issue*

15

*now*." (*Id.* ¶27, emphasis added). And Murphey told Carter in June 2016 that one outcome could be that "you can legally establish this church without providing parking." (DX 20). Before and around the time of these apparent assurances from the City, the Church was attempting to secure off-street parking and working with the alderman on the issue. (DSOF ¶ 19; DX 6; DX 32). The City itself says that the Church was exploring options to secure off-street parking as early as December 2015. (DSOF ¶ 16). *See Irshad Learning Ctr. v. Cty. of Dupage*, 937 F. Supp. 2d 910, 948 (N.D. Ill. 2013) (finding it significant that the religious institution tried to meet the demands of both planning staff and elected officials).

Finally, the City argues that the Church has not shown that the City's actions were arbitrary or in bad faith. The City relies on *New Berlin*, in which the Seventh Circuit noted the "repeated legal errors by the City's officials casts doubt on their good faith." 396 F.3d at 899. The Court found that the burden there was substantial because the "Church could have searched around for other parcels of land…or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense." *Id.* at 901. Indeed, "[t]hat the burden would not be insuperable would not make it insubstantial." *Id.* The Seventh Circuit reversed the district court's entry of summary judgment in the city's favor. Summary judgment is not warranted here either. A trier of fact will need to assess the City's actions as they relate to the alleged burdens on the Church by weighing the evidence and assessing witness credibility.

The Court turns to whether the Church, seeking summary judgment on this claim, has shown as a matter of law that the burden was substantial.[12] The Church points to a number of categories of damages to support its claim.[13] These include:

- The Church is a non-profit and had $0 in net income per its 2020 budget. (PSOF ¶¶1, 51).
- The Church had to pay increased rent from 2016 to 2018 to keep owners Burton and Ellis in the deal for the 1443 and 1447 W. Roosevelt Road properties. (*Id.* ¶¶38, 70).
- Church leadership spent substantial time and effort searching and negotiating for parking space. (*Id.* ¶¶33-36, 67).
- The Church paid at least $12,495.37 in legal fees in pursuit of off-street parking. (*Id.* ¶43).
- The Church entered into a 10-year License Agreement with SP Plus Corporation to obtain the required off-street parking pursuant to M.C.C. § 17-10-0207-I, paying $400 per month. (*Id.* ¶44).
- After the City passed the new ordinance in 2019 regarding the parking requirements, the Church cancelled its agreement with SP Plus, paying the required $9,000 cancelation fee. (*Id.* ¶47).
- The Church's expert, Reverend Rich, quantified the Church's lost revenue to be $125,834. (*Id.* ¶76).
- The Church experienced flooding, mold and a leaky roof (*Id.* ¶66).
- Had it owned (rather than rented) the property, the Church would have been in a better position to invest in the property and improve its ability to operate as a place to regularly gather and attract new members. Renting created uncertainty and harmed the ability to add members and build relationships in the local community. (*Id.* ¶¶10, 69).
- Pastor Carter suffered through panic, sleepless nights, and fell behind in preparing sermons because of this lawsuit. (*Id.* ¶72).

---

[12] The Church argues that "this Court has already determined that the needs are 'great' and the resources are 'very limited.'" (Dkt. 187 at 16). Not so. The Court ruled on a *motion to dismiss*, accepting the Church's allegations as true for the purposes of that motion. It did not rule on the merits of any of the Church's claims.

[13] The Church seeks a total of $344,426.42 in damages for violation of RLUIPA's substantial burden provision; it also states that "it does not seek damages for [certain] expenses but provides them to support the Court's finding that its needs are great." (Dkt. 187 at 16, 21). The Church's briefing is not clear about which categories of damages it believes relate to and are recoverable for the alleged substantial burden violation. In addition, the City raises a concern about Carter's failure to preserve text messages with his landlord. The parties' disputes about the amounts or characterization of damages need not be resolved now. Damages, if warranted, will be addressed at a later date.

17

The City has several objections to the Church's evidence. It argues that Carter's statements are "self-serving" and "speculative," and questions Carter's competence to testify about his subjective experiences. (Dkt. 195-2 ¶¶ 10, 69, 72). These arguments do not support disregarding this evidence. *See Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized…the term 'self-serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.") (citations omitted). In any event, the Court will not assess witnesses' credibility on summary judgment. *See Viamedia*, 951 F.3d at 467; *see also Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021) (the court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.") (cleaned up). Similarly, as to the Church's expert Reverend Rich and his damages calculation, although the Court previously found his report to be admissible and denied the City's *Daubert* motion (*Immanuel Baptist Church v. City of Chicago*, 2021 WL 1722791 (N.D. Ill. Apr. 30, 2021)), the Court agrees that City has the right to cross-examine him. The Court will not judge Rich's credibility at this juncture. Finally, the Court agrees with the City that the evidence at this stage does not establish that the sub-par conditions of the Church are a result of the City's conduct.

To support its motion, the Church relies on *World Outreach*, 787 F.3d 839. The Seventh Circuit there affirmed the district court's finding that the City's state court lawsuit against the organization was frivolous and affirmed the decision to order that the City reimburse World Outreach for litigation expenses that it incurred because

the suit imposed a substantial burden on the organization. The present case does not involve frivolous litigation by the City against the Church. The facts do not warrant a finding as a matter of law at this stage that the City violated RLUIPA's substantial burden provision.

In sum, there are genuine issues of fact for a trier of fact about whether the City's actions imposed a substantial burden on the Church. *See Spirit of Aloha Temple v. Cty. of Maui*, 322 F. Supp. 3d 1051, 1065 (D. Haw. 2018) (denying both parties' summary judgment motions and finding there were questions of fact about whether city's conduct imposed a substantial burden under RLUIPA).

Accordingly, both parties' motions on this claim are denied.

## II. RLUIPA's Equal Terms Provision

RLUIPA's Equal Terms Provision, 42 U.S.C. § 2000cc(b)(1), states that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

"As the Seventh Circuit teaches, a regulation will violate the Equal Terms provision [of RLUIPA] only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated as to the accepted zoning criteria." *Truth Found. Ministries, NFP v. Vill. of Romeoville*, 387 F. Supp. 3d 896, 915 (N.D. Ill. 2016). There are three types of potential violations; this case involves the third: "a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious assemblies." *Id.* (Dkt. 187 at 6). The Church

19

seeks summary judgment on the grounds that the City applied its parking ordinance unequally and showed preferential treatment to library and theater comparators. The City's competing summary judgment motion argues that the Church failed to establish similarly situated comparators or that those comparators (even if proper) were treated more favorably than the Church.

As to the Lozano library, in January 2003, the library secured shared parking for employees and patrons. (DSOF ¶ 74). In August 2015, the street where the library was located was designated a pedestrian street. *Id.* ¶ 76. The library is located within 2,640 feet from the 18th Street Pink Line. *Id.* ¶ 77. Because the Lozano Library is located on a pedestrian street and is located within that distance from the train line, it is not required to provide off-street parking. *Id.* ¶ 78.[14]

The West Loop library was previously zoned DX-5 and thus required no parking under the municipal code. *Id.* ¶79. The library was then re-zoned to Business Planned Development 1391 which does not require any off-street parking for properties in subareas B and C. *Id.* ¶¶ 80-81. Because the library is located in subarea C, it requires no parking. *Id.* ¶82. Next the Altgeld Library is located in planned development 1186, is approximately 10,000 square feet and offers 6 parking spaces. *Id.* ¶¶ 83, 86. Finally

---

[14] The Church's objections to DSOF ¶¶ 74 and 78 are not persuasive. The Church does not explain how a State of Illinois letter to the Lozano Library fails to confirm the fact of its parking arrangement starting in 2003. In response to DSOF ¶ 78, the Church only provides argument and cites only to its response brief which is not a proper response under Local Rule 56.1. These facts are deemed admitted.

Taylor library is in planned development 896, is approximately 14,093 square feet and provides 9 total parking spaces. *Id*. ¶¶ 87, 90.[15]

In summary, the undisputed facts show that one of the library comparators is not required to have any off-street parking, and the other library comparators do have off-street parking. As this Court explained, the relevant zoning criteria in this case is the need for off-street parking. *Immanuel Baptist Church v. City of Chicago*, 283 F. Supp. 3d 670, 676 (N.D. Ill. 2017). Given the differences in the proposed comparators as it relates to this criteria, the Church fails to show how these libraries are proper comparators. *See Irshad Learning Ctr.*, 937 F. Supp. 2d at 933 ("If a plaintiff does not offer a suitable comparator, however, there can be no cognizable evidence of less than equal treatment, and the plaintiff cannot meet its initial burden of proof."). *See also Vision Church*, 468 F.3d at 1003 (proposed comparators subjected to different standards compelled the conclusion that there was no unequal treatment).

As to the proposed theater comparators, the City argues that the Court's prior opinions foreclose any reliance on theaters. More importantly, however, the Church has failed to present facts supported by evidence to demonstrate an issue of fact in order to avoid summary judgment, or to show it has met its burden to prevail on summary judgment on its equal terms claim.

---

[15] The Church's objections to DSOF ¶¶ 82 and 86 are not persuasive. The Church does not explain why the City's exhibit must be "located" or "verified" in the Chicago municipal code. The City has also submitted a sworn declaration by Mr. Murphey to support these statements. The Church's response is otherwise legal argument and reference only its brief, which does not comply with Local Rule 56.1. These facts are deemed admitted.

In its brief, the Church explained that it identified three theaters, all governed by M.C.C. § 17-10-0207, requiring one space for every 10 people of the property's occupancy capacity. (Dkt. 187 at 9). The Church argues that two of the theaters have no off-street parking and one appears to only have one or two spaces. However the Church's statement of material facts contains only one fact related to these theaters, PSOF ¶ 75, and it is solely a statement about aerial Google maps views. The Court has no obligation to scour the record or construct the Church's argument for it. The Church has not presented the evidence in compliance with Local Rule 56.1 and has not developed its position on this issue. *See Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (the Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1."); *see also Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 965 (N.D. Ill. 2007) ("Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider that statement…[and] facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs…").

Therefore summary judgment is granted in the City's favor on the Church's equal-terms claim.

## CONCLUSION

For the stated reasons, the Church's motion for summary judgment [183] is denied. The City's summary judgment motion [195] is granted as to the RLUIPA

equal terms provision claim (Count I) and denied as to the RLUIPA substantial burden claim (Count III).

E N T E R:

Dated: March 14, 2022

_____
MARY M. ROWLAND
United States District Judge