IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IMMANUEL BAPTIST CHURCH, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, <br><br> Defendant. | Case No. 17-cv-00932 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Immanuel Baptist Church (the "Church") has filed a petition for attorneys' fees totaling $679,910.25 from Defendant City of Chicago (the "City"). The City opposes the Church's petition, arguing the Court should substantially reduce the awarded fees. For the reasons stated below, the Church's petition [279] is granted in part and denied in part.

### I. Background

The Court presumes familiarity with the facts of the case and discusses only the facts relevant to the issue at hand.

This litigation began in 2017 when the Church brought suit against the City alleging that the City imposed more demanding parking requirement on religious assembly uses than on non-religious assembly uses in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. [1]. The Church alleged violations of the equal terms provision of RLUIPA, § 2000cc(b)(1), and the equal protection clause of the 14th Amendment of the U.S. Constitution. *Id.* at ¶¶

1

58-66. On May 15, 2017, the City filed a motion to dismiss, [17], which the Court, Judge Tharp presiding, construed as a motion for summary judgment by the parties' agreement. [20]; [33]. The Church also moved for summary judgment. [25]. The Court granted summary judgment in favor of the City and granted the Church leave to file an amended complaint asserting an as-applied RLUIPA claim. [37].

The Church filed its first amended complaint ("FAC") again alleging that the City imposed more demanding parking requirement on religious assembly uses than on non-religious assembly uses in violation of RLUIPA and alleging violations of the equal terms provision of RLUIPA and the equal protection clause of the 14th Amendment. [41]. The Church identified two comparators, both public libraries, to support its claims that the City applied its parking requirement unequally. *Id.* at ¶¶ 66, 78. The City moved to dismiss the FAC. [45]. The Court denied the City's motion to dismiss, finding that the Church had adequately plead that it was similarly situated to one of the library comparators and that the City had treated the Church less favorably than the comparator. [60] at 10.

The Church filed second and third amended complaints in February and August 2019. [83]; [107]. The amended complaints alleged a violation of the substantial burden provision of RLUIPA, § 2000cc(a)(1) in addition to the RLUIPA equal terms provision and equal protection clause claims. *Id.* The City moved to dismiss the new substantial burden claim, [113], which the Court denied because the question of substantial burden is generally an issue of fact. [149].

In May 2021, the Church moved for summary judgment, and the City filed a cross motion for summary judgment. [183]; [195]. The Court denied the Church's motion for summary judgment and granted in part the City's motion for summary judgment. [202]. The Court noted that summary judgment had already been granted in the City's favor on the equal protection clause claim and the facial challenge under RLUIPA. *Id.* at 3. The Court granted summary judgment in favor of the City on the as-applied violation of RLUIPA's equal terms provision claim but denied summary judgment as to the substantial burden claim. *Id.* at 22-23.

In May 2022, the Court set a trial on the Church's remaining claim for September 2022. [206]. In July 2022, the City moved to postpone the trial due to retirement of the City's lead trial counsel. [209]. The Court rescheduled the trial for January 2023. [211].

A four-day bench trial was held in January 2023. [245]; [246]; [247]; [249]. Based on the evidence at trial, the Court ruled in favor of the Church and against the City on the Church's RLUIPA substantial burden claim. [264]. The Church requested a total of $415,509.37 in damages for its substantial burden claim. *Id.* at 16. The Court found that the Church had not met its burden to prove it had suffered most of the damages it requested. *Id.* at 17-19. However, the Court found that the Church had met its burden to recover $13,800 it had paid for a lease on a parking lot as well as well as the cancellation fee and associated $790 in increased insurance premiums. *Id.* The Court therefore granted the Church damages for a total of $14,590. *Id.*

The Church now moves for attorneys' fees pursuant to 42 U.S.C. § 1988. [279].

**II. Standard**

A court may, in its discretion, award reasonable attorneys' fees to the prevailing party in an RLUIPA action. 42 U.S.C. § 1988(b). "The award's size is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). A court begins by calculating the "'lodestar,' which is 'the hours *reasonably* expended multiplied by the *reasonable* hourly rate—and nothing else.'" *Id.* (emphases in original) (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012)). The lodestar may consider factors like the amount involved in the case, the results obtained, and the experience and ability of the attorneys. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

It may then be appropriate to further adjust the lodestar. *Id.* A plaintiff should receive the entire lodestar where they have achieved "excellent results," however the full lodestar may be an excessive amount where a plaintiff achieves "only partial or limited success." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 556). "No algorithm is available for adjusting a lodestar to reflect partial or limited success." *Id.* (internal quotations omitted) (quoting *Richardson v. City of Chicago,* 740 F.3d 1099, 1103 (7th Cir. 2014)). A court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (quoting *Hensley*, 461 U.S. at 436-37).

**III. Analysis**

4

### A. Reasonable Rate

"A reasonable hourly rate is based on the local market rate for the attorney's services." *Montanez*, 755 F.3d at 553 (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)). The "best evidence" for determining the market rate is what the attorney actually bills for similar work, but if that rate cannot be determined, a court "may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* The party seeking the fee award bears the burden of establishing the market rate. *Id.* If the requesting party fails to meet its burden, the court can "independently determine the appropriate rate." *Id.*

#### i. Use of Current Rates

The Church argues that the Court should apply its attorneys' current market rates to calculate the lodestar. [279] at 4. The City objects that it would be inappropriate to apply counsel's current rates to work done for the entirety of this multi-year litigation. [284] at 5. The Seventh Circuit has affirmed the use of both historical market rates and current market rates in multi-year litigation. *Vega v. Chicago Park Dist.*, 12 F.4th 696, 706 (7th Cir. 2021) (citing *Smith v. Village of Maywood*, 17 F.3d 219, 221 (7th Cir. 1994); *Lightfoot v. Walker*, 826 F.2d 516, 523 (7th Cir. 1987)). Applying the current market rate compensates for the delay in payment and simplifies the court's calculation. *Id.* (citing *Lightfoot*, 826 F.2d at 523).

Although, in *Vega*, the Seventh Circuit cautioned that it is "skeptical of using current billing rates in litigation that lasts as long as" six years. *See Vega*, 12 F.4th

5

at 706 (discussing fee petition filed in 2019 for case initially filed in 2013). The *Vega* court concluded that the district court's use of current billing rates was reasonable noting that "using counsel's current billing rates has the virtue of simplicity and that it is appropriate for courts to account for a delay in payment." *Id.*

Here, the Court will apply reasonable current billing rates. A significant proportion of counsel's work in the case occurred in 2022 and 2023 as the parties prepared for and conducted the trial. *See* [279-7]. Therefore, applying current billing rates will not result in a windfall for the Church's counsel, will simplify the Court's calculations, and will account for the delay in payment. *Vega*, 12 F.4th at 706.

### ii. Evidence of Current Rates

The Church has not submitted any evidence of what the current rate its counsel charges for similar work is, nor has it submitted evidence of rates currently charged by similarly experienced attorneys in the community. As evidence in support of its requested rates, the Church submitted the resumes of some its attorneys and cited recent cases where courts have set reasonable rates for some of its attorneys. [279] at 4, 6; [279-1]; [279-2]; [279-4]. The Church then argues that each of those rates should be increased by relying on the Producer Price Index – Office of Lawyers ("PPI-OL"), which the Church asserts shows a "36.36% increase in the prices/cost of attorney services nationwide." [279] at 4-5.

The PPI-OL is not a reasonable benchmark for the Court to use to increase each attorneys' billing rates. An attorney's reasonable hourly rate is based on the local market at issue, and a court may rely on evidence of rates charged by attorneys

6

in the same community with similar experience. *Montanez*, 755 F.3d at 553. The PPI-OL tracks the cost of attorney services nationwide rather than the local market, and there is no indication that the PPI-OL differentiates between attorney practice areas or level of expertise. It is therefore not reasonable to utilize the PPI-OL to apply an across the board increase to all attorneys' rates when a reasonable rate is based on a local market and considers relevant experience in the same types of cases.

The resumes of attorneys Mauck, Baker, and Leahu are also not helpful to the Court's determination of reasonable billing rates. *See* [279-1]; [279-2]; [279-4]. The resumes alone do not provide any information as to what the attorneys' actual billing rates are or what the rates of similarly experienced attorneys are. The resumes are silent as to the attorneys' specific experience and successes with RLUIPA cases. The Church also argues that the Court should consider Mr. Mauck's "personal financial exposure" in determining his reasonable billing rate but cites no authority to support that assertion. [279 at 5].

Therefore, the only reliable evidence that the Church has presented are past fee awards attorneys Mauck, Baker, and Leahu have received in recent cases. The Church has not presented evidence regarding the rates it requests for any other attorney or support staff. The Court addresses each of the requested rates below.

### iii. Requested Rates

#### 1. Attorney John Mauck

The Church requests a rate of $900 for Mr. Mauck. [279] at 4. As support for its requested rate, the Church cites to *World Outreach Conf. Ctr. v. City of Chicago*,

234 F. Supp. 3d 904 (N.D. Ill. 2017), *aff'd,* 896 F.3d 779 (7th Cir. 2018). In *World Outreach*, a Northern District of Illinois court found that $600 was a reasonable rate for Mr. Mauck in 2017 for an RLUIPA case. 234 F. Supp. 3d at 912. The court noted that Mr. Mauck's rate had been set at $550 in a 2011 case and then increased to $600 in a 2016 case. *Id.* The court found the $50 increase from 2011 to 2016 to be reasonable and determined that a reasonable rate for Mr. Mauck continued to be $600 in 2017. *Id.*

The City points to a subsequent 2018 RLUIPA case where a court found that $600 continued to be a reasonable rate for Mr. Mauck. *See Christian Assembly Rios de Agua Viva v. City of Burbank, Illinois*, No. 13 C 622, 2018 WL 2041703, at *2 (N.D. Ill. May 2, 2018). The City argues that the Court should similarly set Mr. Mauck's rate at $600. [284] at 5.

The court in *World Outreach* found a $50 increase from 2011 to 2017 to be reasonable, and here the Court similarly finds that an additional $50 increase is reasonable in light of the number of years since the *World Outreach* and *Christian Assembly* determinations. Additionally, Mr. Mauck's fee awards in those two cases support that he has gained experience in RLUIPA cases. The Court finds that a reasonable rate for Mr. Mauck is $650 per hour.

### 2. Attorney Sorin Leahu

The Church requests a rate of $500 for Mr. Leahu. [270] at 6. As support for its requested rate, the Church cites a December 2023 opinion where the Circuit Court of Cook County determined that $500 was a reasonable rate for Mr. Leahu in an

8

Illinois Citizen Participation Act case. [279-3]. The City argues that the state court case is not relevant to RLUIPA cases, and cites to *Christian Assembly*, where the court found in 2018 that $300 was a reasonable rate for Mr. Leahu. [284] at 6-7; *see Christian Assembly*, 2018 WL 2041703 at *3.

The Court finds that the *Christian Assembly* case is more reliable evidence because it was also an RLUIPA case involving the same type of legal expertise and experience as this case. The Court finds that a $50 increase is reasonable in light of the number of years since the *Christian Assembly* determination and the experience gained from the similar RLUIPA case. The Court finds that a reasonable rate for Mr. Leahu is $350.

### 3. Attorney Noel Sterett

The Church requests a rate of $600 for Mr. Sterett but provides no evidence or argument in support of the requested rate. [279] at 3; *see e.g.*, *id.* at 3-7. The City argues that Mr. Sterett should be given a rate of $400, the same as the court determined in *World Outreach*. 234 F. Supp. 3d at 912-13. Mr. Sterett billed only 4.9 hours throughout this entire case. [279] at 3. The Court finds no reason to increase Mr. Sterett's rate in this case and finds that a reasonable rate for Mr. Sterett is $400.

### 4. Other Attorneys

The Church requests a rate of $450 for Judith Kott but provides no evidence or argument in support of the requested rate. [279] at 3; *see e.g.*, *id.* at 3-7. The City argues that Ms. Kott should be given a rate of $300, but also provides no evidence or argument in support of that rate. *See e.g.*, [284] at 7-8. The Church's requested rate

9

for Ms. Kott was $50 less than its requested rate for Mr. Leahu. *See* [279] at 3. Therefore, the Court finds that $300 is a reasonable rate for Ms. Kott.

The Church requests a rate of $350 for Kristin Erickson, Terry Lu, Robin Rubrecht, and Andrew Willis. [284] at 3. The Church requests a rate of $350 for associate attorneys' work but provides no evidence or argument in support of its requested rate. *Id.* at 6. The City argues that associates should be given a rate of $300, based on the court's determination in *World Outreach*. [284] at 7 n.5; *World Outreach*, 234 F. Supp. 3d at 913. The court in *World Outreach* noted that such a rate was appropriate for a novice attorney, and did not warrant any increase from a 2011 RLUIPA case finding that $300 was a reasonable rate. *Id.* The Church has not presented any evidence as to the general experience level of the associate attorneys, specific experience with RLUIPA cases, or any other reason why the rate for associates should be increased from $300. Therefore, the Court finds that $300 is a reasonable rate for attorneys Erickson, Lu, Rubrecht, and Willis.

### 5. Paralegals

The Church requests a rate of $200 for paralegal work. [279] at 3. The Church provides no evidence or argument in support of the requested rate. *Id.* at 6-7. The City argues that courts in the Northern District of Illinois have found that $125 is a reasonable rate for paralegals in RLUIPA cases. [284] at 7 n.3; *see World Outreach*, 234 F. Supp. 3d at 913; *Christian Assembly*, 2018 WL 2041703 at *3. As similar RLUIPA cases, the *World Outreach* and *Christian Assembly* cases are the best evidence for determining a reasonable rate for paralegal work in this case. The Court

10

finds that $125 is a reasonable rate for paralegals Rene Aguilan, Dylan Burke, Mikaela Hills, and Jonathan Rosenthal.

### 6. Other Timekeepers

The Court does not address the reasonable rates for attorney Richard Baker, Interns, or Communications Manager because, as discussed below, the Court removes the hours expended by those individuals from the lodestar.

### B. Reasonable Hours

A court determining the reasonable number of hours worked for calculating the lodestar should "exclude work that was excessive, redundant, or otherwise unnecessary." *Sommerfield*, 863 F.3d at 650 (internal quotations omitted) (quoting *Johnson*, 668 F.3d at 929). "[D]etermining what qualifies as a "reasonable" use of a lawyer's time is a highly contextual and fact-specific enterprise." *Sottoriva*, 617 F.3d at 975.

The City argues that the Church requests compensation for work that was unrelated to the litigation, duplicative, or otherwise non-compensable. [284] at 8.

### i. Attorney Richard Baker

The City argues that attorney Richard Baker, who testified at trial, served solely in a general counsel role and therefore the Church cannot properly seek compensation for the hours worked by Mr. Baker. [284] at 8-9. The Court agrees.

The Court has reviewed the time entries submitted by the Church. *See* [279-5]. The Church's submitted time entries for Mr. Baker reflect work related to meetings about the factual background of the lawsuit, zoning issues, and a real estate

11

deal with the City. *See e.g., id.* The Church argues that Mr. Baker's work is compensable because it was "time spent to limit or avoid litigation." [285] at 6-7. "But § 1988 does not provide for attorney's fees for rights that do not arise under the Constitution or federal statutes." *World Outreach*, 234 F. Supp. 3d at 916 (quoting *Barrow v. Falck*, 977 F.2d 1100, 1104 (7th Cir. 1992)). Even if Mr. Baker's work on zoning issues or real estate transactions were efforts to resolve the litigation by a different avenue, that work does not relate to rights that arise under the Constitution or federal law. *See id.* ("considerable time preparing or appearing before the City's zoning department and working on identifiable inspection, plumbing, gas, or tax issues … was not done in pursuit of the claims that [plaintiff] raised in this lawsuit").

Mr. Baker's testimony during the trial further supports that he was not involved in the litigation as an attorney. Mr. Baker testified:

> "Once litigation took over, I was not directly involved. And I think my time sheets would reflect that my part was to do initially the zoning, and my part was also to do the real estate. That – you'd asked me – initially I was hired for clearing up the zoning so that a sale could go through. But thereafter, I was hired also to continue to work with the leases and the sale with the owner."

[254] at 265:22-266:3. When asked "you handed the litigation off to your partner, correct?" Mr. Baker responded "Yes." *Id.* at 266:18-20.

Therefore, the Court excludes Mr. Baker's hours from the lodestar calculation.

### ii. Intern & Communications Manager

The Church requests compensation for hours worked by an unnamed Communications Manager. [279] at 3. The time entry for the Communications Manger reflects work related to a press release. *See* [279-5] at 13. Work related to

media publicity is generally not recoverable as legal fees. *See World Outreach*, 234 F. Supp. 3d at 917; *Reid v. Unilever U.S., Inc.*, No. 12 C 6058, 2015 WL 3653318, at *9 (N.D. Ill. June 10, 2015), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016); *Power of Praise Worship Ctr. Church v. Village of Dixmoor, Ill.*, No. 10 C 5436, 2011 WL 1157550, at *2 (N.D. Ill. Mar. 29, 2011). Accordingly, the Court excludes the Communication Manager's hours from the lodestar calculation.

The Church requests compensation for 31 hours worked by an unnamed Intern. [279] at 3. The City argues that this work was excessive and duplicative of the reviewing attorney's work. [284] at 10; [284-1] at 14. Most of the submitted time entries for intern work relate to reviewing case materials, attending court, and meeting with attorneys. *See* [279-5]; [284-1] at 14. "[D]uplicative time that could not be reasonably billed to a client also cannot be billed to an adversary through a fee-shifting statute." *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 989 (N.D. Ill. 2012). Accordingly, the Court excludes the Intern's hours from the lodestar calculation.

### iii. Other Requested Reductions

The City argues that additional time entries should be excluded from the lodestar for being duplicative work, non-compensable clerical work, or insufficiently documented work. [284] at 10-11. "[M]erely because two lawyers have billed for the same task does not mean that the hours should be deducted." *Gibson*, 873 F. Supp. 2d at 989. And block billing is not a prohibited practice. *See Farfaras v. Citizens Bank and Tr. of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006).

13

The Court has reviewed the time entries submitted by the Church and will not exclude these additional time entries the City objects to. The City argues that the time spent on internal conferences was excessive, inefficient, or duplicative and should be reduced by 50%. [284] at 10. Review of the time entries the City objects to shows that the City grouped together any entry that stated "conference with" or "confer with," entries referencing correspondence or emails rather than conferring, as well as block billed entries that included other tasks in addition to attorneys conferring with one another. *See* [284-1] at 16-40. The City cites no authority for the idea that attorneys on a litigation team conferring with one another is excessive, inefficient, or duplicative. And the City asks the Court to exclude entries related to written correspondence as well as other tasks unrelated to attorney meetings or discussions. The Court declines to reduce these time entries by 50%. Similarly, based on the Court's review of the disputed time entries, the Court will not exclude the hours that the City asserts are not complex enough for paralegals or were not sufficiently documented because block billing was used.

### C. Further Adjustment to the Lodestar

#### i. Adjusted Lodestar

The below table shows the adjusted lodestar, reflecting the adjusted billing rates and hours as determined by the Court above.

| Timekeeper | Adjusted Hours | Adjusted Rate | Adjusted Billable |
|---|---|---|---|
| Rene Aguilan | 22.40 | $125.00 | $2,800.00 |
| Richard Baker | 0 | N/A | $0.00 |
| Dylan Burke | 0.90 | $125.00 | $112.50 |
| Kirstin M Erickson | 1.50 | $300.00 | $450.00 |

14

| Timekeeper | Adjusted Hours | Adjusted Rate | Adjusted Billable |
|---|---|---|---|
| Mikaela N Hills | 63.70 | $125.00 | $7,962.50 |
| Judith Kott | 0.60 | $300.00 | $180.00 |
| Sorin A. Leahu | 401.90 | $350.00 | $140,665.00 |
| Terry Lu | 17.20 | $300.00 | $5,160.00 |
| John Mauck | 325.40 | $650.00 | $211,510.00 |
| Jonathan M Rosenthal | 352.20 | $125.00 | $44,025.00 |
| Robin Rubrecht | 70.10 | $300.00 | $21,030.00 |
| Noel W. Sterett | 4.90 | $400.00 | $1,960.00 |
| Communications Manager | 0 | N/A | $0.00 |
| Intern | 0 | N/A | $0.00 |
| Andrew S Willis | 107.30 | $300.00 | $32,190.00 |
| Jennifer Baek | 57.20 | $125.00 | $7,150.00 |
| Susan Thomas | 3.20 | $125.00 | $400.00 |
| | | | |
| **Total** | | | **$475,595.00** |

### ii. Reduction for Partial or Limited Success

The City argues that the Church's attorneys' fees should be reduced by 75% to account for the Church's limited success. [284] at 14. The City argues that the Church's substantial burden and equal treatment claims "are not interconnected legally or factually" therefore the Church should not be able to recover attorneys' fees for time spent on its unsuccessful equal treatment claims. *Id*. The City further argues that a 75% reduction would "properly capture the time spent on 3 of the 4 claims that did not reach trial and should not be compensable." *Id*.

After determining the lodestar, a "court may make further adjustments that are appropriate for the case." *Sommerfield*, 863 F.3d at 651. "A plaintiff who achieves excellent results should receive the entire lodestar, but where a plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount." *Montanez*,

15

755 F.3d at 556 (internal quotations omitted) (quoting *Hensley*, 461 U.S. at 435-36). A court should not award attorneys' fees work on unsuccessful and unrelated claims that are "entirely distinct and separate from prevailing claims," but claims are related where they "involve a common core of facts *or* are based on related legal theories; there is no requirement that *both* facts and law be in common." *Vega*, 12 F. 4th at 703 (emphases in original). Where a court "cannot easily separate the successful and unsuccessful work" it should "make an across-the-board reduction that seems appropriate." *Montanez* 755 F.3d at 557.

Here, the Church initially brought a facial RLUIPA claim and a Fourteenth Amendment claim, which were both dismissed at summary judgment. The Church subsequently brought an as-applied RLUIPA claim and a substantial burden claim. The as-applied claim was also dismissed at summary judgment, however the Church prevailed on its substantial burden claim at trial. While the Church sought $415,509.37 in damages for its substantial burden claim, the Court found that the Church had not met its burden to prove most of the requested damages and awarded the Church $14,590 in damages.

While the City asserts that the Church's unsuccessful claims are not connected legally or factually to its successful substantial burden claim, there is clearly a common core of facts that all of the Church's claims were based on. The Church's substantial burden claim was based on largely the same set of facts: the Church's efforts to comply with the City's zoning ordinances. The Church's successful and unsuccessful claims are therefore related, and the Court cannot easily separate the

16

attorneys' work on the different claims. The Court will therefore apply an across-the-board reduction to the lodestar.

The Seventh Circuit has made clear that courts may not limit attorneys' fees to "some multiple of the judgment." *Montanez*, 755 F.3d at 557. Similarly, courts may not "claim count" and reduce the lodestar proportionally to the number of unsuccessful claims. *Sottoriva*, 617 F.3d at 976. The City's request that the lodestar be reduced by 75% is the type of claim counting that the Seventh Circuit has cautioned against.

In light of the Church's limited success on its total number of claims, and its limited success on its requested damages for its successful substantial burden claim, the Court finds that a 50% across-the-board reduction to the lodestar is reasonable. Numerous courts have found a 50% reduction to be reasonable when considering attorneys' fees requests from plaintiffs who had partial or limited success. *See Sommerfield*, 863 F.3d at 651 (affirming district court's 50% reduction of lodestar); *Baker v. Lindgren*, 856 F.3d 498, 504 (7th Cir. 2017) (same); *Montanez*, 755 F.3d at 556 (same).

As explained above, the adjusted lodestar totaled $475,595. With the 50% reduction, the amount of attorneys' fees the Court will award is $237,797.50. The Church's submission of supplemental authority was not helpful to the Court, therefore the Court declines to award the additional $4,950 in attorneys' fees the Church requests for work associated with submitting the supplemental authority. *See* [287].

### D. Costs

The Church requests $5,851.35 in costs. [279] at 12; [279-8]. The City objects to several of the Church's requested costs. [284] at 23. "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

The City argues that expert witness fees are not recoverable costs. [284] at 23. The Church did not respond to this argument on reply. [285] at 15. "[A] party's own expert witness fee generally is not recoverable as a cost." *Lane v. Person*, 40 F.4th 813, 815 (7th Cir. 2022) (citing *Abernathy v. E. Ill. R.R. Co.*, 940 F.3d 982, 994–95 (7th Cir. 2019)). The Court will therefore exclude the $1,500 the Church paid to its expert Jonathan Rich from its recoverable costs. *See* [279-8].

The City also argues that Westlaw and Lexis research fees, shipping fees, and travel expenses are all not recoverable costs. The Seventh Circuit has held that postage and delivery fees and computerized legal research fees are recoverable as part of an attorney-fee award. *Tchemkou v. Mukasey*, 517 F.3d 506, 513 (7th Cir. 2008). Courts have also found travel expenses to be recoverable expenses. *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1048 (N.D. Ill. 2013). Therefore, the Court declines to exclude the other costs the City objects to.

The Court awards the Church costs of $4,351.35.

### IV. Conclusion

For the stated reasons, Plaintiff's petition for attorneys' fees is granted in part and denied in part. The Court awards the Church $237,797.50 in attorneys' fees and $4,351.35 in costs.

E N T E R:

Dated: March 4, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge